# Exhibit B

# Services Agreement
# And
# Amendment to Services Agreement

## <u>SERVICES AGREEMENT</u>

This Services Agreement (the "Agreement") is made by and between Mr. Bar-B-Q Products LLC, a New York limited liability company ("Mr BBQ"), and Union Square Limited, a Hong Kong corporation ("USL"), each of Mr BBQ and USL being a "Party" and collectively "the Parties".

### RECITALS;

A.      Mr BBQ intends to acquire or has acquired the grill accessories and related product business assets of Blue Rhino Global Resources, Inc. ("Business") with whom USL has been doing business.

B.      Mr BBQ through its acquisition of the Business  will sell various grill accessories and other products throughout the world.

C.      Mr BBQ and USL intend that USL will provide certain sourcing and services to Mr BBQ in connection with the various grill accessories and other products sold or to be sold by Mr BBQ.

D.      Mr BBQ and USL desire to enter into this Agreement upon the terms and conditions set forth herein.

### DEFINITIONS:

A.      As used herein "Affiliate" shall mean any entity that Mr BBQ controls, directly or indirectly, or any entity that controls Mr BBQ, directly or indirectly, or any entity that is controlled by any of the foregoing entities, including, but not limited to, any parent, subsidiary or sister company of Mr BBQ; provided, however, that Mr BBQ will make a good faith effort to transition the barbeque accessories portion of any subsequently-acquired affiliate's business to USL after a suitable post-closing transition period.

### AGREEMENT

1.      <u>Appointment</u>.  Subject to the terms and conditions set forth herein, Mr BBQ hereby appoints USL as its exclusive services supplier for Mr BBQ's product line of grill accessories described in Exhibit "A" and any other grill accessories and other items that are in a product category that Mr. Bar-B-Q, Inc. has in the past purchased through USL but not including those which are sold by a subsequently acquired Affiliate during a post-transition period (collectively, "Products").  This is an all requirements Agreement for the Products.

This Section shall be binding on all present and future Affiliates of Mr BBQ and as long as this Agreement remains in effect, neither Mr BBQ nor any Affiliate may appoint any other person or entity to perform any of the Services to be provided by USL hereunder, whether for the benefit of Mr BBQ, an Affiliate, or any other person or entity.  For the avoidance of doubt, as long as this

1

Agreement shall remain in effect neither Mr BBQ nor any of its Affiliates shall perform any of the Services to be performed by USL hereunder with respect to the Products.

Notwithstanding the foregoing, Mr BBQ and its Affiliates may continue to obtain from sources other than USL gas grilles and patio heaters, fire pits, fireplace accessories and assorted other items of the type currently sold or licensed to be sold by Blue Rhino Global Sourcing or Mr BBQ, as reflected on Exhibit "F".

2.    Term. The Term of this Agreement shall commence on July 27, 2018 or the Closing date when Mr BBQ purchases the Business, whichever date is the first to occur, and end on March 31, 2025. Notwithstanding the foregoing, either party may terminate this Agreement during the Term by written notice provided not less than 150 days prior to the expiration of each two-year period during the Term, i.e. 150 days prior to March 31, 2019, 2021 or 2023. If notice is timely given, the Term shall end at the expiration of the two-year term, i.e. the following March 31st.

3.    Services. USL shall source the Products with one or more suitable manufacturers, negotiate Product costs, pay the manufacturers, provide quality control, manage the manufacturers, test, prepare product packaging, pack containers, prepare export documents, execute shipments, coordinate logistics and provide all such other services as are necessary to purchase and deliver the Products to Mr BBQ's designated agent or freight forwarder. (collectively "the Services").

4.    Reimbursable Expenses. Mr BBQ agrees to reimburse USL for reasonable and necessary out-of-pocket expenses incurred in providing the Services, including but not limited to freight, tolling and mold charges, consultant commissions, artwork, film, product design, labels, print cards, samples, hand samples, copier costs, quality control tests, warehouse rents, lab and factory audits, print cards and sticky labels, any MOQ charges, sub-material products purchased on Mr BBQ's behalf, salaries for personnel responsible for artwork, film, and product design, charges for CFS shipments, and Hong Kong and China storage facilities ("Reimbursable Expenses"). Mr BBQ shall reimburse USL for these expenses at actual cost to USL. Upon payment of any Reimbursable Expenses for tangible goods, equipment or other property (e.g, molds, tooling, etc.), title and ownership to such goods, equipment or other property shall pass to Mr BBQ and USL agrees to execute any documentation necessary to effectuate such transfer of title and ownership. A list of currently approved Reimbursable Expenses and pre-approved expense limits is attached as Exhibit "B".

5.    Price and Payment.

(a)    Mr BBQ agrees to pay USL for Products delivered FOB Port (Asia), and USL agrees to sell to Mr BBQ: (I) delivered Products at the per unit prices agreed upon as set forth in Exhibit "C" or at such per unit prices as are agreed upon from time to time as the costs of the Products change; and (ii) new Products at such per unit prices as are agreed upon from time to time as such new Products are added or at such unit prices as are agreed upon from time to time as the costs of the new Products change. Mr BBQ shall pay USL for delivered Products no later than thirty (30) days after receipt of USL's invoice(s) therefore.

2

(b)    Services Fee.   In addition, Mr BBQ agrees to pay USL a fee in the amount of 8% of the per unit prices established in accordance with (a) above.  Mr BBQ shall pay the Service Fee on or before the last day of the month following the month in which the Products were shipped by USL.

(c)    Reimbursable Expenses.  Subject to Section 4, Mr BBQ agrees to pay Reimbursable Expenses to USL.  Mr BBQ shall pay USl for Reimbursable Expenses within thirty (30) days of receipt of USL's invoice(s) therefor.  In the event of a dispute concerning the amount owed, and subject to Section 13, Mr BBQ agrees to pay the undisputed amount of the invoice, but may withhold payment of any disputed amounts pending resolution of the dispute.

(d)    Payments Due Upon Termination or Expiration.   Following termination or expiration of this Agreement, Mr BBQ shall continue to make all of the foregoing payments to USL for product purchased from USL and for expenses incurred by USL prior to termination or expiration.

(e)    Validation of Payments Due.  Upon the request of Mr BBQ, USL shall validate all payments due hereunder from Mr BBQ to USL by providing detailed backup documents to Mr BBQ.

6.    Distribution Rights and Restrictions.  As long as this Agreement shall remain in effect and except for USL's customers as set forth in Exhibit "D", Mr BBQ shall have the exclusive rights to distribute each of the Products worldwide, and USL and its Affiliates shall not market, sell, produce or otherwise distribute the Products (with or without Mr BBQ's trademarks) without the prior written consent of Mr BBQ and shall not manufacture, supply, distribute or sell any grill accessories and related products or packaging and other printed materials, including the Products (collectively "Competitive Products") on its own behalf or for the direct or indirect benefit of other persons or businesses to any customer of Mr BBQ who has purchased any Competitive Products from Mr BBQ.

7.    Manufacturing Specifications; Samples; Tooling.

(a)    Each of the Products shall be manufactured and packaged in accordance with agreed upon written specifications and requirements of Mr BBQ and or its customers, and any changes to such specifications and requirements shall require the prior consent of Mr BBQ.

(b)    Upon Mr BBQ's request, USL shall provide Mr BBQ with working samples of any new product being considered for purchase, and purchase thereof shall be subject to Mr BBQ's written approval. Mr BBQ agrees to pay the costs associated with international freight if the same is to be sent to Mr BBQ or its customers.

(c)    Subject to Section 4, Mr BBQ shall be responsible for tooling and mold costs for the manufacture of Products, provided that USL requests and receives prior written approval from Mr BBQ prior to any such expenditure.  In all instances USL hereby agrees to hold such molds, tooling or other assets used in conjunction with the Products and paid for by Mr BBQ in a constructive trust for the benefit of Mr BBQ.

3

8.    Certifications.

(a)    USL represents and warrants that prior to delivery all of the Products shall have been tested and approved by the designated Agency Testing Laboratories and or related Customers Testing Requirements and other testing laboratories as required. Costs related to such testing and approvals shall be paid by Mr BBQ. All Products must use materials, finishes, and packaging, and be labeled such that they meet or exceed the requirements of the destination location to which the Products are to be sold. However, and notwithstanding the foregoing, testing shall only be required for Products for which Mr BBQ has provided a written request to USL for such testing and per agreed upon written testing requirements for such Products.

(b)    USL represents and warrants that each factory utilized to manufacture Products shall meet the written requirements of Mr BBQ and/or its customers, and such manufacturers must be approved in advance by Mr BBQ. Mr BBQ hereby approves the factories that USL is currently using for good manufactured for and/or on behalf of Mr BBQ.

9.    Orders, Shipments and Inventory Build-Up Payments.

(a)    Mr BBQ shall submit written purchase orders for the Products (the "Purchase Orders") or other written and related documentation that serve as Purchase Orders.

(b)    USL shall ship Products that meet Mr BBQ's specifications and requirements. Mr BBQ shall work closely with USL and Mr BBQ's customers to minimize any costs in the event Products cannot ship on time. USL shall not be responsible for any costs incurred for late shipments caused by Mr BBQ, Mr BBQ's agent, the customer or the customer's agent.

(c)    To aid in procuring lower costs and to facilitate on time shipment, upon USL's request and on such other terms as shall be mutually agreed between the Parties, Mr BBQ shall make advance payments to USL for purchases of Products (per Section 5(a)) together with applicable Reimbursable Expenses in advance of a given year's shipments for the purpose of securing raw materials and pre-building inventory ("Advances"). Advances will be reimbursed by USL to Mr BBQ pursuant to a schedule agreed upon by the Parties on an annual basis by deducting such Advances from the Services Fee payable to USL. Advances for any given year will become the sole responsibility of USL to be paid or credited back to Mr BBQ pursuant to agreed upon terms, except to the extent that USL has expended such funds pursuant to this Agreement for Products that Mr BBQ does not order. USL will not sell, lease, assign, transfer, pledge, hypothecate or otherwise encumber, except as specifically permitted in writing by Mr BBQ, any Products for which it has received Advances.

10.    Compliance With Applicable Laws.    USL warrants and represents that it has and will continue to follow all laws, rules and regulations that are applicable to the Services and Products or their manufacture, assembly, sale or wholesale or retail distribution, and in furtherance of this obligation, upon the Effective Date and at such other times thereafter as may be requested by Mr

4

BBQ, USL shall execute a Declaration of Compliance in the same or substantially similar form as Exhibit "E".

11.    Warranties.    In addition to any other warranties in this Agreement, USL warrants that: (a) the Products supplied hereunder will conform to the agreed upon written specifications and written timelines of Mr BBQ or its customers; (b) the Services supplied hereunder will be performed in a professional and workmanlike manner; (c) USL and the Products supplied hereunder will comply with all applicable laws, including but not limited to the Foreign Corrupt Practices Act; and (d) USL will have good and marketable title to the Products supplied by USL hereunder (the "Warranties"). The Warranties will inure solely to the benefit of Mr BBQ.  Except as provided in this Section 11, or as otherwise set forth in this Agreement, USL specifically disclaims any and all other warranties and representations, express or implied, including but not limited to any warranty that the Products do not infringe any third party rights.

12.    Inspection; Acceptance; Return.

    (a)   Mr BBQ will have the right to inspect each shipment of Products within a reasonable time following receipt of such shipment.  Mr BBQ will notify USL in writing within sixty (60) days after receipt of Products if any such Products do not appear upon inspection to conform with the Warranties (including, without limitation, the agreed upon specifications).

    (b)   If any Products supplied hereunder fail to conform to the Warranties, USL will, at Mr BBQ's discretion, and as Mr BBQ's sole remedy, either: (i) refund to Mr BBQ the price of the non-conforming Products, together with the applicable Service Fee; (ii) provide replacement Products on an expedited basis at no cost to Mr BBQ; or (iii) implement a reasonable alternative remedy as the Parties may mutually agree.

    (c)   Other than minor variations caused by manufacturing processes, USL will not change, cause to be changed, or modify either the Products or the written specifications of the Products without Mr BBQ's prior written consent.  Changes requiring such notice include but are not limited to the following:  (i) changes to materials used to manufacture the Products; (ii) process changes or changes in handling, storage and distribution; (iii) equipment changes, such as changes in equipment and manufacturing location or replacement of critical equipment components that could impact Product performance or quality; (iv) procedures and testing changes such as changes in test conditions, test additions or deletions, test frequency, target or specification ranges, shelf life, sampling plans, use of third-party consultants, measurement methods or equipment; (v) packaging component changes, such as label revisions or packing arrangement changes; (vi) new raw material qualification, such as supplier, material or ingredient changes for any quality critical non-commodity material; (vii) site qualifications, such as addition or deletion of site utilized to manufacture the Products; (viii) any changes in ownership of USL; or (ix) regulatory filings, declaration of compliance or conformity or any form of certifications applicable to the Products, the Services and/or the manufacturing process for such Products.

(d)    Upon receipt of any such written change notice, Mr BBQ will have ten (10) days to approve or reject in writing a requested change. In addition to any other rights or remedies provided herein or at law or equity, if USL makes any such change to a Product without Mr BBQ's written consent, USL will be liable for damages in the amount equal to any actual and direct damages, costs and expenses incurred by Mr BBQ as a result of such unauthorized change. Mr BBQ shall not unreasonably withhold its consent to minor changes requested by USL.

13.    Default; Termination.    The breach by either Party of any representation, warranty, covenant, or other obligation under this Agreement will be deemed a breach of this Agreement (a "Breach").

(a)    In the event of a Breach, the breaching Party shall have sixty (60) days from notice of the Breach to effect a cure, or if the Breach is of a type that cannot be cured within sixty (60) days, the breaching Party shall within said sixty (60) day period take substantial steps to cure such Breach and diligently pursue and effect a complete cure thereafter. In the event of a Breach, the non-breaching Party shall only be entitled to damages in an amount equal to any actual and direct damages, costs and expenses incurred by the non-breaching Party as a consequence of such Breach.

(b)    In the event a Breach is a material Breach "Material Breach" and in the event the breaching Party fails to effect a cure of such Material Breach as set forth in Section 13(a), then in addition to any other remedy to which the non-breaching Party may be entitled, the non-breaching Party may, at its election, terminate this Agreement upon notice to the breaching Party. As used herein, a Material Breach means a Breach that is of such a serious nature that the non-breaching Party cannot objectively be expected to continue performance under this Agreement. Any notice of Breach shall specify whether the non-breaching Party considers the Breach to be a Material Breach, and in the absence of such specification the Breach shall not be considered a Material Breach. Notwithstanding anything herein to the contrary, the non-breaching Party may not terminate this Agreement in the event of a Material Breach caused by a factory responsible for the manufacture of Products.

(c)    This Agreement may be terminated by either Party immediately upon written notice if the other Party shall have made an assignment for the benefit of creditors, filed a petition in bankruptcy, or is adjudged insolvent or bankrupt; a receiver or trustee is appointed with respect to a substantial part of the other Party's property; or a proceeding is commenced against the other Party that is likely to substantially impair its ability to perform its obligations hereunder.

(d)    Notwithstanding anything in this Agreement to the contrary, the failure to make timely payment of any undisputed amount due and owing under this Agreement shall constitute a Material Breach, and if such non-payment is not cured within thirty (30) days of notice of such non-payment, the non-breaching Party may, at its election, terminate this Agreement.

(e)    In the event of a Material Breach, the non-breaching Party may, in its sole discretion, and in addition to any other remedies it may have at law or in equity, set off from any amounts owed to the breaching Party, under this Agreement or otherwise, any amounts properly

6

due and payable from the breaching Party to the non-breaching Party. In the event of a Material Breach by Mr BBQ, USL, in addition to any other remedy to which it may be entitled at law or in equity, shall have the right to withhold shipment of Products until such Material Breach is cured. In the event of a Material Breach by USL, Mr BBQ, in addition to any other remedy to which it may be entitled at law or in equity, shall have the right to withhold payments of any kind until such Material Breach is cured.

(f)     Any right to terminate this Agreement pursuant to this Section 13 will be in addition to, and not in lieu of, any rights that the terminating Party may have at law or in equity.

14.     Indemnification. In the event of a Breach, the breaching Party will defend, indemnify and hold harmless the non-breaching Party, and their Affiliates, officers, directors, employees, representatives, agents, successors and assigns only from and against actual and direct damages, costs and expenses incurred by the non-breaching Party as a consequence of such Breach.

15.     Intellectual Property.

(a)     USL hereby assigns and shall cause its officers, directors, employees, agents and subcontractors to assign to Mr BBQ all intellectual property rights (patents, trade secrets, copyrights, trademarks, trade dress and/or know how) in all ideas, inventions product, process or service improvements, confidential information, trade secrets, patents, trade dress, copyrights, trademarks and trade names developed or created in connection with the Products or the performance of this Agreement, except that nothing in this Agreement shall be construed to assign to Mr BBQ any intellectual property rights or other right or interest in the manner n which USL conducts its business.

(b)     USL acknowledges that all intellectual property (patents, trade secrets, copyrights, trademarks, trade dress, and/or know how) developed by USL or Mr BBQ in connection with this Agreement will be owned solely by Mr BBQ, including all intellectual property associated with the Products or any future products, materials, processes or services developed, their composition, the process for the manufacture, and any applications for such products, materials or processes. USL will not issue any press release, public notification, or otherwise, that uses names, or that depicts or references Mr BBQ or any of Mr BBQ's brands or trademarks, without the prior written consent of Mr BBQ, which consent will not be unreasonably withheld. USL will not use any trademarks of Mr BBQ or its Affiliates in any way without the prior written consent of Mr BBQ, which consent will not be unreasonably withheld, but nothing herein shall preclude USL from advising third parties that it is and/or has been the agent for Mr BBQ.

16.     Confidential Information.

(a)     Each Party acknowledges that during the performance of this Agreement it shall be entrusted with certain Confidential Information of the other Party that should reasonably have been understood by the receiving Party, due to legends or other markings, the circumstances of disclosure or the nature of the information itself, to be proprietary and confidential information of the disclosing Party and agrees that it will use reasonable care to protect the confidentiality thereof,

using at least the same measures it would use to protect its own similar information. During the Term, and for a period of three (3) years after expiration or termination of this Agreement, the receiving Party will not (a) use such Confidential Information for any purpose except the performance of this Agreement, or (b) disclose any such Confidential Information to any person (except employees, agents, attorneys and advisers on a need-to-know basis where such persons are advised of these obligations of confidentiality, or as otherwise required by law) unless such disclosure is authorized by the disclosing Party in writing, or (c) disclose any such Confidential Information pursuant to a judicial request or order without first informing the other Party and reasonably cooperating with such other Party if such other Party elects to contest such disclosure.

(b)      For purposes of this Agreement, "Confidential Information" shall mean all data and information submitted to USL by Mr BBQ or processed, developed, amended or modified or enhanced by USL on Mr BBQ's behalf in connection with the Services or the Products, and all data and information submitted by USL to Mr BBQ or processed, developed, amended, modified or enhanced by Mr BBQ on USL's behalf in connection with the Services or the Products.

(c)      The obligations of each Party under this Section will not apply to information that (i) was in a Party's possession without confidentiality restriction prior to disclosure as evidenced by materials in such Party's possession predating the date of disclosure by the other Party, except for the prior Services Agreement pertaining to the Business; (ii) was generally known in the trade of business in which it is practiced by the receiving Party at the time of disclosure, or becomes generally known after such disclosure, through no act of the receiving Party; or (iii) has come into possession of the receiving Party rightfully from a third party that had no obligation of confidentiality concerning such information. Mr BBQ and USL may share this Agreement in its entirety with their Affiliates without breaching their confidentiality obligations.

17.      Independent Contractor.      The Parties hereto are independent contractors, solely responsible for their own employees and not in a partnership or joint venture with each other or with any employee of the other Party, and neither Party will hold itself out as, or give any person reason to believe that it is an agent or employee or otherwise under the control of the other Party or its employees.

18.      Risk of Loss.   The Parties agree that title to and risk of loss for the Products shall pass to Mr BBQ upon delivery of the Products to Mr BBQ's agent or designee.

19.      Non-Solicitation.  As long as this Agreement shall remain in effect and for a period of one (1) year thereafter, neither Party shall solicit for employment, hire, consult with or otherwise retain, directly or indirectly, the services of any personnel of the other Party, its affiliates or assignees. In the event that Mr BBQ engages another entity to replace USL upon termination or expiration of this Agreement, then Mr BBQ shall require such other entity to comply with this Section 19 for a period of one (1) year following such termination or expiration.  Any actions in violation of this Section shall be considered a Material Breach of this Agreement and will entitle the non-breaching Party to seek immediate injunctive relief in addition to any other remedies available at law or in equity.

8

20.    Time is Of the Essence.  The Parties agree that time is of the essence with respect to the performance of the Services, the supply of the Products, and the terms and conditions of this Agreement.

21.    Choice of Law.  This Agreement shall be governed and construed in accordance with the laws of the State of New York, notwithstanding its conflicts of law provisions.

22.    Dispute Resolution: Forum Selection.  The Parties shall first attempt to settle all disputes in connection with this Agreement through negotiations. In the event no settlement is reached within thirty (30) days after the dispute first arose, then either Party may submit the dispute to binding arbitration before a single arbitrator pursuant to the rules set forth from time to time by the American Arbitration Association or JAMS.  In any such arbitration, the prevailing Party shall be entitled to its reasonable attorney's fees and costs, including fees for the arbitration and the arbitrator's fees. The parties agree that the arbitration shall be conducted in New York City, New York, U.S.A.

23.    Assignment.  USL shall not assign or transfer its rights under this Agreement in whole or in part to any non-affiliated entity without the prior written consent of Mr BBQ.  Mr BBQ shall not assign or transfer its rights under this Agreement to any non-affiliated entity without the prior written consent of USL.

24.    Amendment and Waiver.  This Agreement may not be modified, amended, altered, or supplemented except by written agreement, executed and delivered by both Parties hereto. Any term or provision of this Agreement may be waived at any time by the Party that is entitled to its benefits, but such waiver must be in writing signed by the waiving Party.

25.    Counterparts.  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

26,    Notices.  All notices to be given hereunder shall be personally delivered or sent by express or overnight mail or courier, or by certified or registered mail, return receipt requested, with postage prepaid, to the parties at the following addresses (or to such other or further addresses as the parties may hereafter designate by like notice similarly sent):

> To Mr BBQ:         Mr. Bar-B-Q- Products LLC
>                    ATTN: Marc Zemel
>                    10 Hub Drive
>                    Melville, New York 11747
>
>
>                    With a copy to:
>
>                    Andrew G. Sholes, Esq.
>                    Sholes and Sholes

9

1375 Warwick Avenue
Warwick, RI 02888

To USL:            Wayne Margolin, Managing Director
                   Union Square Ltd.
                   601 Mirror Tower
                   61 Mody Road
                   Tsimshatsui East
                   Kowloon
                   Hong Kong

All notices shall be effective on the date of delivery.

27.    Obligations to Purchase Inventory.  Upon termination or expiration of this Agreement, Mr BBQ shall be obligated to purchase from USL any items that, prior to such termination or expiration, Mr BBQ ordered pursuant to Purchase Orders or other written documentation.

28.    Force Majeure.  If performance of this Contract or any obligations under this Contract is prevented, restricted or interfered with by causes beyond either Party's reasonable control ("Force Majeure"), and if the Party unable to carry out its obligations gives the other Party prompt written notice of such event, then the obligations of the Party invoking this provision shall be suspended, but only as to the specific obligations whose performance is prevented, restricted or interfered with by such event.  The term Force Majeure shall include, without limitation, acts of God, fire, explosion, vandalism, storm or other similar occurrence, orders or acts of military or civil authority, national emergencies, insurrections, riots, wars, strikes, lock-outs, work stoppages, or supplier failures.  The excused Party shall use reasonable efforts under the circumstances to avoid or remove the cause of any non-performance hereunder, and shall proceed to perform any suspended obligations with reasonable dispatch whenever such causes are removed or ceased.  However, Force Majeure shall not include an act or omission committed, omitted or caused by a Party, or its employees, officers, agents or Affiliates.  During such time that a Force Majeure event prevents USL from performing its obligations under this Agreement, Mr BBQ shall have the right to obtain Services and/or Products from third-parties, including directly from USL's factory suppliers. In the event of a Force Majeure event lasting in excess of 90 days, the party entitled to performance may, at its election, terminate this Agreement upon thirty (30) days written notice.

29.    Section Headings.  The headings contained in this Agreement are for reference only and shall not affect the interpretation of this Agreement.

30.    Severability.  If any provision of this Agreement or the application thereof to any person or circumstance shall be held to be invalid or unenforceable, then in each such event the remainder of this Agreement or the application of such provision to any other person or any other

10

circumstance shall not be thereby affected. In such event, the Parties shall negotiate in good faith to replace the invalid or unenforceable provision with another reflecting the same relative distribution of economic benefits and burdens.

31.    Survival. Provided this Agreement goes into effect, the Parties agree that the following Sections of this Agreement shall survive its termination or expiration: (i) Sections 4, 14-16, 19, 21, and 22, (ii) any other Section that by its terms extends beyond such termination or expiration, but only to the extended date set forth in such Section, and (iii) any Section that addresses activity that may occur after such termination or expiration, such as shipments made and payments due following termination or expiration.

32.    Entire Agreement. This Agreement sets forth the entire understanding of the Parties with respect to the subject matter hereof, and all prior understandings or agreements between the Parties concerning such subject matter are hereby merged herein.

33.    Authorization. USL and Mr BBQ each represent that (i) it has full authority to enter into and perform this Agreement, (ii) the execution and performance of this Agreement will not violate any other obligation to another person or entity not a Party to this Agreement, and (iii) the individual executing this Agreement is competent and duly authorized to do so.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

MR. BAR-B-Q PRODUCTS LLC

By

Printed Name: _Tracey C. Baran_

Title: _Manager_

UNION SQUARE LIMITED

By

Printed Name: _WAYNE MARGOLIN_

Title: _Managing Director_

11

## AMENDMENT TO SERVICES AGREEMENT

This modification agreement is entered into and effective as of the 4th day of February, 2020, by and between Union Square Limited, a Hong Kong corporation ("USL"), and Mr. Bar-B-Q Products LLC, a New York limited liability company ("Mr. BBQ"). USL and Mr. BBQ are each a "Party," and collectively the "Parties."

The Parties have entered into a Services Agreement, effective as of July 27, 2018, a copy of which is annexed hereto as **Exhibit A** (the "Agreement"). The Agreement, which was modified on March 29, 2019, August 21, 2019, and October 29, 2019 (all attached as **Exhibit B**), will terminate on March 31, 2020, after which date USL will not be required to accept from Mr. BBQ, and Mr. BBQ will not be required to submit to USL, any purchase orders, except as otherwise set forth herein. The Parties now wish to further modify the Agreement, in the manner set forth herein, to provide for an orderly and amicable termination of the Agreement.

For good and valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.  USL will accept and fulfill the eighty-nine (89) purchase orders for BBQ accessories heretofore submitted by Mr. BBQ and identified in **Exhibit C** (the "Orders"). All products manufactured pursuant to the Orders shall be shipped to Mr. BBQ customers or to Mr. BBQ facilities as specified on the Orders.

2.  After the effective date of this Amendment, USL will accept and fulfill all purchase orders submitted by Mr. BBQ up to and including April 15, 2020, provided that those orders have ship dates not later than June 15, 2020 (the "Additional Orders"). The Parties agree that the procedure for submission of Additional Orders by Mr. BBQ and acceptance of Additional Orders by USL shall be the same procedure heretofore followed by the Parties for submission and acceptance of purchase orders. Mr. BBQ shall submit all Additional Orders promptly to USL to avoid overburdening the factories.

3.  Mr. BBQ shall pay USL an additional 5% commission on all Additional Orders issued to USL between March 1 and April 15, 2020. For the avoidance of doubt, such Additional Orders will be commissionable at 13% rather than 8%. Mr. BBQ will pay USL an additional 2.5% commission on all Additional Orders issued to USL prior to March 1, 2020. For the avoidance of doubt, all such Additional Orders will be commissionable at 10.5% rather than 8%. In addition, for all Additional Orders accepted by USL with shipment dates after March 31, 2020, at the same time that Mr. BBQ issues an Additional Order to USL, Mr. BBQ shall remit to USL 50% of the amount of the Additional Order. Notwithstanding the foregoing, no additional commission and no upfront payment of 50% of the amount of the purchase order shall be due for the Orders listed in **Exhibit C** and the Additional Orders listed in **Exhibit D**, and any other proposed order submitted by Mr. BBQ to USL prior to February 1, 2020.

1

4.    Mr. BBQ shall pay USL pursuant to the payment schedule annexed hereto as **Exhibit E** (the "Schedule"), which provides for (i) full payment of all currently outstanding USL invoices; and (ii) full recoupment by Mr. BBQ of $3 million in funds previously advanced to USL.  Notwithstanding the foregoing, the Parties agree that the January 30, 2020, payment on the Schedule in the amount of $970,801.22 shall be wired to USL on February 7, 2020, and the February 6, 2020, payment on the Schedule in the amount of $997,131.52 shall be wired to USL on February 10, 2020.

5.    Any USL invoices not included on the Schedule will be paid as follows: within fifteen (15) days of Mr. BBQ's receipt of invoice for direct shipments to Mr. BBQ customers; within one (1) week after Mr. BBQ's receipt of shipment for shipments to Mr. BBQ's warehouse facilities; and within twenty-one (21) days of Mr. BBQ's receipt of invoice for reimbursement of USL's monthly expenses.

6.    If , but only if, USL promptly accepts and ships Mr. BBQ orders in accordance with paragraphs 1-5 above, Mr. BBQ will continue to place all orders exclusively with USL through April 15, 2020.

7.    USL will arrange for and coordinate the return of all molds, tooling, and other assets used therewith (such as a slug used with a mold for printing a logo, said molds, tooling, and other assets collectively "Molds") paid for by Mr. BBQ from factories at which they are currently located.  USL shall promptly (and, in all events, not later than March 3, 2020) provide Mr. BBQ with a complete list of all such Molds and the factories at which they are located, and in the event Mr. BBQ believes the list is incomplete in any respect it shall so notify USL, and USL shall respond to such notice by either providing the missing information or explaining why no additional information is required.  Mr. BBQ will arrange for the removal and transportation of the Molds (at its own cost) by giving USL written notice of intent to retrieve them.        receipt of such notice of intent, USL will promptly contact the appropriate factory in writing inquiring as to when the Molds can be made available for pick-up by Mr. BBQ, and at the same time USL shall notify Mr. BBQ that such inquiry has been made.  Within five (5) business days of receipt of Mr. BBQ's notice of intent, USL shall inform Mr. BBQ of the factory's proposed pick-up schedule.  USL shall be responsible for any additional costs incurred by Mr. BBQ as a result of USL's failure to notify factories as provided above.

8.    Prior to April 1, 2020, USL will not engage in any form of marketing of any products that would be competitive with Mr. BBQ's products.  Nor, in conversations or other communications with prospective customers prior to April 1, 2020, will USL compare Mr. BBQ products with any competitive products that USL contemplates selling in the future.  However, nothing herein shall preclude USL from advising potential customers that after April 1, 2020, USL will continue in business.  The Parties acknowledge that after March 31,

2020, USL may quote potential customers some of the same items that Mr. BBQ has quoted to such customers, and Mr. BBQ acknowledges and agrees that such conduct shall not constitute a violation of this Amendment or the Services Agreement. Except for conduct permitted by this Amendment or the Agreement, nothing herein authorizes either Party to compete with the other Party in a manner that violates controlling law.

9.  USL will not manufacture or cause to be manufactured any products competitive with Mr. BBQ products prior to April 1, 2020.

10. Prior to April 1, 2020, no samples of Mr. BBQ products, whether or not owned by USL, may be used by USL as selling tools to promote or market USL's new venture. At no time, before or after April 1, 2020, may USL use any of the samples of Mr. BBQ products currently in USL's warehouse as selling tools to promote or market USL's new venture, and in return Mr. BBQ agrees to continue reimbursing USL for the cost of renting the warehouse through March 31, 2020. Commencing April 1, 2020, the restriction in the preceding sentence shall not apply to any samples in USL's showroom.

11. Through April 15, 2020, USL will respond to routine (day-to-day) requests from Mr. BBQ personnel for information, updates, approvals, reasonable requests for samples and mockups, etc., as it had done prior to September 2019, provided, however, that USL will no longer be responsible for new product development. USL specifically agrees that up to March 31, 2020, it shall develop new artwork as requested by Mr. BBQ.

12. USL shall provide Mr. BBQ with all Lowes packaging and inventory information once every two weeks per Mr. BBQ's requests in the Dailys.

13. Notwithstanding paragraph 22 of the Agreement or the provision therein requiring a 30-day waiting period, in the event either Party believes that the other Party is infringing any of its intellectual property rights, the Party alleging such infringement may seek preliminary injunctive relief against such infringement in the United States District Court for the Southern District of New York in New York County, New York, and if and only if such court lacks subject matter jurisdiction, then such Party may seek such relief in the New York State Supreme Court in New York County, New York, and solely for purposes of an action seeking such preliminary injunctive relief the Parties consent to the personal jurisdiction of such courts. For the avoidance of doubt, the foregoing shall only apply to an action seeking preliminary injunctive relief, and the ultimate determination of whether a Party has infringed the other Party's intellectual property rights shall be decided by arbitration in accordance with paragraph 22 of the Agreement, if applicable. In any court action the prevailing party shall be entitled to its reasonable attorneys' fees and costs.

3

14.    Excepting for violations of this Amendment that are not capable of cure, in the event either Party believes that after the effective date of this Amendment the other Party has breached this Amendment, before initiating an arbitration or filing for injunctive relief pursuant to paragraph 13 above, the Party alleging a breach shall first provide a notice to the other Party detailing the nature of the alleged breach, and the other Party shall then have five (5) business days to cure such alleged breach, and in the event the other Party cures the alleged breach, the Party alleging the breach shall not file for arbitration or seek injunctive relief concerning such alleged breach.  All communications pursuant to this paragraph 14 shall be conducted by email between Mike Guadagno for Mr. BBQ (mguadagno@mrbarbq.com) and Wayne Margolin for USL (wayne.margolin@unionsquare.com.hk), with email copies to their respective counsel, i.e., Martin Hyman (mhyman@golenbock.com) for Mr. BBQ and Martin Pavane for USL (mpavane@cozen.com).   Notwithstanding the foregoing, in the event any USL invoice is shown to have not been paid by Mr. BBQ within five (5) days of the due date for payment in accordance with paragraph 5 above, then in addition to any other remedy USL may have, Mr. BBQ shall pay USL interest at the rate of 2% of the invoice amount for each month or part thereof that such payment is overdue.  For the avoidance of doubt, the procedure for notices in paragraph 26 of the Agreement shall not apply to communications pursuant to this paragraph 14.

15.    Subject to applicable law, each of the Parties covenants and agrees that neither it nor any of its respective agents, subsidiaries, affiliates, successors, assigns, officers, key employees or directors, will in any way publicly disparage, call into disrepute, defame, slander or otherwise criticize the other Party or the other Party's subsidiaries, affiliates, successors, assigns, officers, directors, employees, shareholders, agents, attorneys or representatives, or any of the other Party's products or services, in any manner that would damage the business or reputation of the other Party, its products or services, or its subsidiaries, affiliates, successors, assigns, officers, directors, employees, shareholders, agents, attorneys or representatives.

16.    The Parties acknowledge and agree that this Amendment may be executed in one or more counterparts, and that all such counterparts shall constitute one and the same agreement.  This Amendment may be executed by facsimile or email signatures, and such facsimile or email signatures shall be deemed original signatures for all purposes.

17.    (a)    USL, voluntarily and knowingly, for itself and its officers, directors, employees, agents, affiliates, successors and assigns (collectively, the "USL Releasors"), does hereby release and forever discharge Mr. BBQ, as well as its officers, directors, members, employees, agents, affiliates, successors and assigns (collectively, the "Mr. BBQ Releasees"), from any and all actions, suits, damages, liabilities, claims and demands whatsoever (collectively, the "Claims"),

4

known and unknown, foreseen and unforeseen, in existence on or before the effective date of this Amendment, which any of the USL Releasors, or anyone claiming through any of them, ever had, now has or might ever have, for, relating to, or concerning the Agreement or the March 29, 2019, August 21, 2019, and October 29, 2019, modifications thereof. USL represents and warrants that it has not sold, assigned, encumbered, transferred or otherwise disposed of any Claim released by the USL Releasors herein, or otherwise impaired its ability to sign a complete and binding release of any Claim released by them herein. For purposes of clarity, this release by USL does not include any claim that may arise under this Amendment.

(b)       Mr. BBQ, voluntarily and knowingly, for itself and its officers, directors, employees, agents, affiliates, successors and assigns (collectively, the "Mr. BBQ Releasors"), does hereby release and forever discharge USL, as well as its officers, directors, members, employees, agents, affiliates, successors and assigns (collectively, the "USL Releasees"), from any and all actions, suits, damages, liabilities, claims and demands whatsoever (collectively, the "Claims"), known and unknown, foreseen and unforeseen, in existence on or before the effective date of this Amendment, which any of the Mr. BBQ Releasors, or anyone claiming through any of them, ever had, now has or might ever have, for, relating to, or concerning the Agreement or the March 29, 2019, August 21, 2019, and October 29, 2019, modifications thereof. Mr. BBQ represents and warrants that it has not sold, assigned, encumbered, transferred or otherwise disposed of any Claim released by the Mr. BBQ Releasors herein, or otherwise impaired its ability to sign a complete and binding release of any Claim released by them herein. For purposes of clarity, this release by Mr. BBQ does not include any claim that may arise under this Amendment.

Except as amended above, the Agreement and the March 29, 2019, August 21, 2019, and October 29, 2019, modifications of the Agreement shall remain in full force and effect, as will any and all provisions of the Agreement that, by its terms, survive termination.

**REST OF PAGE INTENTIONALLY LEFT BLANK**

5

**MR. BAR-B-Q PRODUCTS LLC**

By: _____    Date: Feb 7, 2020
    Marc Zemel, CEO


**UNION SQUARE LIMITED**

By: _____    Date: Feb 7, 2020
    Wayne Margolin, President

6