# Exhibit C

# First Partial Final Award

INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION

INTERNATIONAL ARBITRAL TRIBUNAL

Mr. Bar-B-Q Products, LLC

Claimant/Counterclaim Respondent

-and-

Union Square Limited and Wayne Margolin

Respondents/Counterclaimants

PARTIAL FINAL AWARD

The Tribunal

Stephen S. Strick, Sole Arbitrator

INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION

INTERNATIONAL ARBITRAL TRIBUNAL

| | |
|---|---|
| In the matter of arbitration:<br><br>Mr. Bar-B-Q Products, LLC<br><br>("Mr. Bar-B-Q" or "Claimant")<br><br>vs.<br><br>Union Square Limited and Wayne Margolin<br><br>(individually "USL" and "Margolin," and together "Respondents") | ICDR Case Number 01-20-0005-4914<br><br>Partial Final Award |

PARTIAL FINAL AWARD

I, THE UNDERSIGNED ARBITRATOR (the "Tribunal" or "Arbitrator"), having been designated in accordance with Section 22 of the Services Agreement between Mr. Bar-B-Q and USL effective July 27, 2018 (as amended March 29, 2019, August 21, 2019, and October 29, 2019) (the "Agreement"),[1] and having been duly sworn and having duly heard the proofs and allegations of the parties, do hereby AWARD as follows:

I.      INTRODUCTION

       A.      The Parties

---

[1] The Agreement was further amended by an Amendment to Services Agreement dated February 4, 2020 (the "Amendment"). The Amendment contains the parties' agreement regarding, inter alia, the winding down of their business relationship. The Agreement and the Amendment are sometimes referred to together herein as the "Agreements."

1.    <u>Claimant/Counterclaim Respondent</u>

Mr. Bar-B-Q Products, LLC ("Mr. Bar-B-Q" or "Claimant") is a corporation organized under the laws of the State of New York with offices and its principal place of business in Melville, New York.  Mr. Bar-B-Q purchases barbecue accessories and outdoor tools manufactured in the People's Republic of China (the "PRC") and sells those products to retail stores such as Lowe's, Target, and Walmart (Canada).

2.    <u>Respondents/Counterclaimants</u>

USL is a Hong Kong corporation based in Hong Kong.  USL was engaged under the Agreement to act as Claimant's exclusive sourcing agent for barbeque accessories from factories located in the PRC, for which USL received commissions and reimbursement of certain expenses from Mr. Bar-B-Q.  Respondent Margolin is the owner of USL.

B.    <u>Jurisdiction, Choice of Law, Applicable Rules</u>

This Arbitration was commenced, and jurisdiction is conferred upon this Tribunal, by Section 22 of the Agreement[2] (Claimant's "Ex. 1A"), which provides for the administration of the proceeding by the American Arbitration Association ("AAA").[3]  Under Section 22 of the Agreement, the issues in this proceeding are to be governed by the laws of the State of New York without regard to its conflicts of law provisions.

In personam jurisdiction of this Tribunal over individual Respondent Margolin is conferred by Margolin's written consent.  (*See* Paragraph 3b, First Procedural Order, dated August 22, 2020.)

---

[2] Section 22 of the Agreement provides:
> The Parties shall first attempt to settle all disputes in connection with this Agreement through negotiations. In the event no settlement is reached within thirty (30) days after the dispute first arose, then either Party may submit the dispute to binding arbitration before a single arbitrator pursuant to the rules set forth from time to time by the American Arbitration Association or JAMS. In any such arbitration, the prevailing Party shall be entitled to its reasonable attorney's fees and costs, including fees for the arbitration and the arbitrator's fees. The parties agree that the arbitration shall be conducted in New York City, New York, U.S.A.

[3] Because of the international character of this dispute, this arbitration is administered by the International Centre for Dispute Resolution, which is the international division of the AAA.

1

II.    <u>PROCEDURAL HISTORY</u>

A.    <u>Commencement of Proceedings/Pleadings</u>

Claimant commenced this proceeding by filing its Demand for Arbitration dated June 4, 2020 against Respondents.  Claimant claims that Respondents breached the Agreement and the Amendment and committed various business-related torts as set out herein.  Claimant seeks monetary damages, injunctive relief, arbitration fees, and costs, including attorney's fees.

On or about July 23, 2020, Respondent USL filed an Answering Statement and Counterclaim and Answer, Affirmative Defenses, and Counterclaims.  Respondent USL asserts that Mr. Bar-B-Q breached the Agreement and the Amendment, failed to pay sums due to USL, including for invoices for goods purchased by Claimant and commissions and expenses due to USL.  Respondent USL seeks monetary relief, damages, attorney's fees, interest, and arbitration costs.

Throughout the course of this proceeding, the parties have amended and supplemented their pleadings, which, along with other filings by the parties, are part of the case record.

B.    <u>Appointment of Arbitrator/Preliminary Hearings/Form of Award</u>

The undersigned was appointed as the sole Arbitrator to hear the parties' claims, defenses, and counterclaims and to render rulings and awards accordingly.  Following service of a Notice of Preparatory Hearing by the International Centre for Dispute Resolution (the "ICDR"), counsel for each of the parties appeared before the Arbitrator for a first hearing conference, during which issues relating to claims, counterclaims, and defenses, as well as pre-hearing and hearing scheduling and related matters, were discussed.  These hearings took place telephonically on August 10, 17, and 20, 2020, and were attended by Mark Stumer, Esq. of Mark B. Stumer & Associates, PC, who appeared on behalf of Claimant, and Martin Pavane, Esq. and Edward Chin of the Davis Firm PC, who

appeared for Respondents.  John DiMatteo, Esq. has also appeared as counsel in this proceeding on behalf of Claimant.

The parties agreed that the Arbitrator is to provide a form of final award in which the Arbitrator explains his reasoning in reaching his conclusion (i.e., a "Reasoned Form of Final Award").  The parties have agreed that the Arbitrator's reasoned awards, both partial and final, need not explain every argued basis for reaching a conclusion with respect to the issues to be decided and that a ruling or award may be made with respect to each claim, counterclaim, or defense on the basis of a single reason, or for additional reasons as determined by the Arbitrator, and the Arbitrator does not necessarily need to discuss reasons for reaching his conclusions on all bases and arguments made by each side.

C.    Motions and Pre-Hearing Requests, Hearings

1.    Motions/Rulings; Hearings

After a number of pre-hearing discussions and requests by the parties, and following motions and rulings relating to the exchange of documents and other matters, including late cancellation and rescheduling of hearing dates, an evidentiary hearing on the merits in this proceeding, deemed seated in New York, was held via Zoom conference on March 8, 9, 13, 14, 15, and 16, 2021.  Closing oral argument was held on May 10 and 12, 2021, via Zoom conference.

2.    Witnesses/Exhibits/Transcripts

The parties presented the testimony of the following 11 witnesses via witness statement, cross-examination, and rebuttal: Marc Zemel, Michael Guadagno, Jacob Rothman, Scott May, Benjamin Kofoed, Jody Beasley, Feng Tun Kai (via witness statement only), Michael Jud, Jonathan Leung, Jenny Chen, and Wayne Margolin.  The Tribunal also received into evidence numerous

exhibits that are part of the record in this case.  A transcript of the six-day hearing was prepared and has been extensively reviewed by the Arbitrator.

D.    Stipulations Relating to Claimant's Claims

At the suggestion of the Tribunal, the parties entered into stipulations relating to the dismissal of Claimant's claims (i) for copyright infringement, (ii) for patent design infringement, and (iii) with respect to the accuracy of certain invoices submitted by USL for payment by Mr. Bar-B-Q.[4]

III.    DISCUSSION OF ISSUES AND FINDINGS OF THE TRIBUNAL

A.    Claims of the Parties

This arbitration arises out of the alleged breaches of the Agreement and the Amendment asserted by the parties in their respective claims and counterclaims, pleadings, and briefs filed in this proceeding.  In addition to claims for breach of contract, Claimant alleges that it suffered damages as a result of tortious behavior committed by Respondents.  (*See* paragraph 1.b. below.)

1.    Claimant's Claims[5]

a.    Breach of Contract Claims

Claimant alleges that Respondent USL (i) failed to fulfill orders and ship merchandise as agreed; (ii) marketed competitive items prior to April 1, 2020, as prohibited by Section 8 of the Amendment; (iii) failed to arrange and coordinate the return of Claimant's proprietary molds and tooling in accordance with Section 7 of the Agreement and as required by Section 7 of the Amendment; (iv) used Claimant's samples on and after April 1, 2020, as selling tools to promote

---

[4] *See* Stipulations Concerning Respondents' Invoices; Stipulations Dismissing Claimant's Copyright and Design Patent Infringement Claims.
[5] *See* Claimant's Fourth Amended Supplement to Notice of Arbitration, dated February 3, 2021.

or market its new venture as prohibited by Section 10 of the Amendment; (v) violated Section 15 of the Amendment by disparaging, calling into public disrepute, and/or criticizing Claimant to multiple third parties, including Claimant's customers, leading to damages in the form of lost business from long-standing customers of Claimant; (vi) breached Section 15 of the Amendment by disparaging Claimant to at least five factories in the PRC that produced products that Claimant sold and by further instructing these factories to immediately and permanently cease working with Claimant, resulting in damages to Claimant;[6] (vii) violated Section 16 of the Agreement by making unauthorized use of confidential information, including Claimant's margin information, pricing, and costs for its products, causing significant damages to Claimant due to price erosion and lost profits.

b.    Claimant's Non-Breach of Contract Claims

Claimant also alleges that it incurred damages because Respondents engaged in acts amounting to (i) unfair competition (infringement of design patents—selling similar or identical products and making unauthorized use of copyrighted photographs to market and sell USL's products); (ii) tortious interference with prospective business advantage by publishing harmful and false information about Claimant intended to ensure that customers and factories ceased doing business with Claimant; (iii) breach of fiduciary duties as Claimant's agent; and (iv) breach of the implied covenant of good faith and fair dealing under applicable New York law.

c.    Claimant's Request for Dismissal of Counterclaims

Claimant seeks dismissal of Respondents' counterclaims, monetary damages, and injunctive relief; Claimant also seeks its costs and expenses of this arbitration, including reasonable

---

[6] Claimant also asserts that Respondent Margolin published statements amounting to defamation and defamation per se that harmed Claimant's business.

attorney's fees and costs.  (*See* Claimant's Pre-Hearing Brief (Corrected) at G.)[7]

## 2.    Respondents' Counterclaims and Affirmative Defenses

Respondents allege by way of counterclaim that Claimant has breached the Agreement by failing to pay USL sums due and owing, namely $4,304,896.14 for 142 invoices issued by USL to Claimant for products USL shipped on Claimant's behalf, commissions owed to USL for those shipments, and reimbursable expenses owed to USL.  (*See* USL's Counterclaim, ¶¶ 8-15).[8]

---

[7] Claimant seeks the following relief:
  (i)    $1.63 million for the failure to return Mr. Bar-B-Q's molds and tooling which Claimant asserts is the book value of the molds and tooling listed by USL on March 2, 2020 as belonging to Mr. Bar-B-Q and to be returned. CX 11; Or, In the alternative, the award of $1.4 million in consequential damages, representing the amount of money Mr. Bar-B-Q paid to purchase new molds to continue the operation of its business. CX 57. "This award compensates Claimant for Respondents' breach of their fiduciary duties; breach of Section 7 of the Service's Agreement and Section 7 of the Amendment; breach of their covenant of good faith and fair dealing; or their unfair competition."
  (i)    $3.2 million for losing the "Target Everyday" business. The amount represents four years of lost net profits for that line of business. CX 15. This award compensates Claimant for Respondents breach of their fiduciary duties or breach of Section 15 of the Amendment; breach of their covenant of good faith and fair dealing; or their unfair competition.
  (ii)    $1.4 million of the loss of Walmart Canada. That amount represents five year of lost net profits. CX 17. This award compensates Claimant for Respondents breach of their fiduciary duties or breach of Section 15 of the Amendment; breach of their covenant of good faith and fair dealing; or their unfair competition.
  (iii)    $7.4 million for profit erosion. That amount is the estimated loss of 50% of net profits to Mr. Bar-B-Q over the next four years. This award compensates Claimant for Respondents breach of their fiduciary duties or breach of Section 16 of the Services Agreement; breach of their covenant of good faith and fair dealing; or their unfair competition.
  (iv)    The award of Claimant's reasonable legal fees and costs including the fees for the arbitration and the arbitrator's fees as required under Section 22, Dispute Resolution; Forum Selection, of the Services Agreement.
  In view of Respondents' breach of their fiduciary duties; multiple breaches of the Services Agreement and Amendment; breach of their covenants of good faith and fair dealing; and their unfair competition, Claimant asks that the Tribunal provide the following additional equitable remedies:
  (i)    Deny Respondents' counterclaims.
  (ii)    Require Respondents to immediately return or destroy all records it has of Mr. Bar-B-Q's confidential business information including customer lists, customer order histories, customer product specifications, customer quality control documents, product designs, packaging specifications, and any other file that references Mr. Bar-B-Q, Mr. Bar-B-Q products, or Mr. Bar-B-Q customers.
  (iii)    Enjoin Respondents and their affiliates from using any of Mr. Bar-B-Q's confidential business information for a period of at least three years as required under Section 16 of the Services Agreement.
  (iv)    Enjoin Respondents and their affiliates, including Respondents' recently acquired business Charcoal Companion, from selling any barbeque accessories that compete with Mr. Bar-B-Q's accessories for a period of one year.
[8] Claimant stipulates that USL made and shipped product for it in 2020 and that USL's invoices identified as numbers 1-137 in paragraph 12 of the Third Amended Supplement to Counterclaim by Respondent [USL] for Monies Due and Owing Pursuant to Contract correspond to products that USL made and shipped on behalf of Mr. Bar-B-Q; that those invoices total $3,440,535.84; that Mr. Bar-B-Q has not paid any of those invoices; and that Mr. Bar-B-Q will not challenge the accuracy of those invoices. Claimant asserts in its stipulation that it is not obligated to pay invoices 1-137 and that it may continue to pursue that assertion in this arbitration. (*See* Stipulation Regarding Respondents' Invoices filed with the Tribunal on or about April 2, 2021.)

Respondents also allege that Claimant is contractually bound by Section 27 of the Agreement to purchase the inventory on USL's invoices 4188 (in the amount of $4,462,798.72), 4190 (in the amount of $77,397.18), and 4191 (in the amount of $859,181.98).[9]  (*See* USL's Counterclaim, ¶¶ 20-25.).[10]

In addition, Respondents deny that USL breached the Agreement and assert that Claimant's allegations that Respondents committed business torts are baseless and should be dismissed.

Respondents seek dismissal of Claimant's claims, an award of monetary damages for sums due and owing as outlined above, interest, costs, and attorneys' fees. (*See* Respondents' Post Hearing Brief at X.)[11]

## IV.    SUMMARY OF PARTIAL FINAL AWARD

After carefully considering the pleadings; briefs; evidence, including submitted documents, direct testimony of numerous witnesses, and testimony on cross-examination; and argument of counsel, the Tribunal finds that Claimant has failed to meet its burden of proof or persuasion to a preponderance of the evidence that Respondents breached the Agreement or committed the business torts as alleged in Claimant's pleadings.  I further find that Respondents have met their burden to prove their counterclaims and are entitled to the relief set forth below.

---

[9] *See* RX41 (invoice 4188) and RX46-49 (backup for invoice 4188); RX56 (invoice 4190) and RX57 (backup for invoice 4190); RX59 (invoice 4191); and Tr. 1419:11-1421-23 (Chen).

[10] The parties are currently in discussions with the Tribunal to determine how much of the inventory in question was produced, purchased by Claimant, and/or remains in inventory with third parties.  Consequently, and as noted below, a ruling and possible award with regard to this issue is deferred and the Tribunal retains jurisdiction to determine all questions relating to the inventory issues presented in this proceeding and that are part of its record.

[11] Respondents seek the following relief:

    On USL's Counterclaim, USL should be awarded $4,304,896.14 for unpaid invoices for products made and shipped on Mr. BBQ's behalf and reimbursable expenses, plus interest at the contractual rate of 2% for each month or part thereof that each such invoice remains unpaid; $4,642,798.74 for inventory itemized in invoice 4188; $77,397.18 for inventory itemized in invoice 4190; and $859,181.98 for inventory itemized in invoice 4191 (all to be adjusted based on inventory sales after the invoice date).

    Respondents as the prevailing parties should also be awarded their attorneys' fees and costs.

    For all awards that are not subject to the contractual rate of interest (i.e., inventory, attorneys' fees, and costs), USL should be awarded interest at the New York rate of 9% per annum. (Citations omitted.)

A.    Claimant's Breach of Contract Claims

As noted, I find that Claimant has failed to meet its burden of proof by a preponderance of evidence that Respondents breached the Agreement or the Amendment as it alleges.

1.    Breach of Contract/Failure to Fulfill Orders

On May 5, 2020, USL informed Claimant through its attorney, Martin Pavane, that because Claimant was substantially late in paying USL's invoices, USL would withhold shipment of Claimant's orders (and mold retrieval) until payment was brought current.  (*See* CX 19.)

After a careful review of the case record, I find that the evidence adduced during this proceeding convincingly shows that substantial sums were owed to USL that, to this day, remain unpaid, and that consequently Respondent USL rightfully exercised its option under Section 13(d) of the Agreement to withhold shipment.

Section 13(d) of the Agreement provides:

Notwithstanding anything in this Agreement to the contrary, the failure to make timely payment of any undisputed amount due and owing under this Agreement shall constitute a Material Breach . . .

Section 13(e) of the Agreement provides in pertinent part:

In the event of a Material Breach by Mr. BBQ, USL, in addition to any other remedy to which it may be entitled at law or in equity, shall have the right to withhold shipment of Products until such Material Breach is cured.

Opposing that view, Claimant asserts that its failure to pay USL's invoices did not constitute a "Material Breach" of the Agreement because the sums contained in those invoices were not "undisputed" and consequently Section 13(d) did not apply.[12]

After reviewing the briefing on the issue requested by the Tribunal and after considering

---

[12] Claimant also asserts that Pavane's failure to use the "magic words" "Material Breach" as required in Section 13 are fatal to USL's position.

8

cited case law and argument, I am convinced that Respondents' view is correct. Specifically, because amounts due USL by Mr. Bar-B-Q (in fact, substantial amounts—later stipulated as $3,440,535.84) were not in dispute, the parties' intention was that Mr. Bar-B-Q's failure to pay constituted a "Material Breach," and under Section 13(e), USL was permitted to withhold shipment of product. Accordingly, Claimant's claim for damages due to USL's breach of its contractual obligations to ship and fulfill product orders is misplaced and is therefore DENIED.

        2.    <u>Breach of Sec. 8 of the Amendment by Marketing Products Before April 1, 2020</u>

Claimant alleges that Respondents violated Section 8 of the Amendment, which provides as follows:

> Prior to April 1, 2020, USL will not engage in any form of marketing of any products that would be competitive with Mr. BBQ's products. Nor, in conversations or other communications with prospective customers prior to April 1, 2020, will USL compare Mr. BBQ products with any competitive products that USL contemplates selling in the future. However, nothing herein shall preclude USL from advising potential customers that after April 1, 2020, USL will continue in business. The Parties acknowledge that after March 31, 2020, USL may quote potential customers some of the same items that Mr. BBQ has quoted to such customers, and Mr. BBQ acknowledges and agrees that such conduct shall not constitute a violation of this Amendment or the Services Agreement. Except for conduct permitted by this Amendment or the Agreement, nothing herein authorizes either Party to compete with the other Party in a manner that violates controlling law.

After considering the evidentiary record, I find that Claimant has failed to meet its burden of proof and has not convinced the Tribunal that Respondent USL violated Section 8 of the Amendment by, prior to April 1, 2020, marketing products that would be competitive with Mr. Bar-B-Q's products. Furthermore, even assuming arguendo that Respondents published verbal statements prior to April 1, 2020, that its prices would be lower than Mr. Bar-B-Q's prices, or that could be construed as "critical" of Claimant's business, Claimant has failed to prove that such statements directly and proximately caused any specific quantifiable damages to it.

9

In fact, Claimant failed to show it suffered any damages due to "marketing" statements made to Claimant's customers. I note, parenthetically, that notwithstanding Claimant's assertions of damages, it appears from the record that to date USL has had little luck convincing Claimant's customers that it should purchase products from USL.

Claimant's claims for breach of Section 8 of the Amendment are therefore DENIED.

3.      Breach of Sec. 7 of the Agreement and Sec. 7 of the Amendment—Molds and Tools

Claimant asserts that Respondents violated Section 7(c) of the Agreement, obligating USL to hold Mr. Bar-B-Q's molds, tooling, and other assets in a constructive trust for the benefit of Mr. Bar-B-Q, and Section 7 of the Amendment, obligating USL to return Mr. Bar-B-Q's molds. Section 7 of the Amendment provides:

> USL will arrange for and coordinate the return of all molds, tooling, and other assets used therewith (such as a slug used with a mold for printing a logo, said molds, tooling, and other assets collectively "Molds") paid for by Mr. BBQ from factories at which they are currently located. USL shall promptly (and, in all events, not later than March 3, 2020) provide Mr. BBQ with a complete list of all such Molds and the factories at which they are located, and in the event Mr. BBQ believes the list is incomplete in any respect it shall so notify USL, and USL shall respond to such notice by either providing the missing information or explaining why no additional information is required. Mr. BBQwill arrange for the removal and transportation of the Molds (at its own cost) by giving USL written notice of intent to retrieve them. [Upon] receipt of such notice of intent, USL will promptly contact the appropriate factory in writing inquiring as to when the Molds can be made available for pick-up by Mr. BBQ, and at the same time USL shall notify Mr. BBQ that such inquiry has been made. Within five (5) business days of receipt of Mr. BBQ's notice of intent, USL shall inform Mr. BBQ of the factory's proposed pick-up schedule.USL shall be responsible for any additional costs incurred by Mr. BBQ as a result of USL's failure to notify factories as provided above.

The weight of the evidence adduced during this proceeding leads the Tribunal to conclude that Claimant has failed to meet its burden to prove that Respondents breached the Agreements or failed to comply with obligations with respect to Claimant's molds.

10

Section 7 of the Amendment (amending the Agreement) sets forth the parties' respective rights and obligations relating to the molds (owned by Mr. Bar-B-Q). Substantial evidence exists in the record that Jenny Chen and others on behalf of USL attempted in good faith to secure the molds in question, but that the process was complicated by a number of factors—including the involvement of multiple participants failing to act in concert. I note, too, that while the process was ongoing, Mr. Bar-B-Q at some point decided to abandon its participation in the retrieval of the molds. I am convinced that from the time the mold pickup process began in March 2020 until Mr. Bar-B-Q stopped picking up molds around mid-May 2020, USL worked diligently to arrange for and coordinate the molds' return. (*See* March 18, 2021, E. Chin Letter to Tribunal listing over 60 emails sent by USL to Claimant and/or the factories to coordinate mold pickups; *see also* January 24, 2021, Chen (Corrected) Rebuttal Witness Statement, ¶ 10; Respondents' Post Hearing Brief, VI C, pp. 37-42.)

Claimant's claims for damages for breach of the Agreement and the Amendment with respect to its molds and tools are therefore DENIED.

### 4. Breach of Sec. 10 of the Amendment—Using Claimant's Samples

Next, Claimant alleges that Respondents breached "Section 10 of the Amendment by shipping Mr. Bar-B-Q product samples that were not in USL showrooms to customers and passing them off as USL products." (Claimant's Opening Pre-Hearing Brief, p. 11, subparagraph (v).)

As Respondents note in their Post Hearing Brief, "the only instance Mr. BBQ cites in support of this claim, CX60 at USL00012694 (see Claimant's Pre-Hearing Opening Brief, p. 14), shows that Mr. BBQ's name was 'stickered over' on some samples to avoid confusion, not create it (*see* CX60 at USL00012694. ("Noted, samples will be tagged & sticker over Mr. BBQ name so there is no confusion for buyer." . . .), and the samples were open market items, not proprietary items. (Tr.

11

399:6 -401:14 (Jud))."

In addition, as noted in Respondents' Post Hearing Brief, "this claim should also be dismissed for the additional, independent reason that Mr. BBQ made no claim for damages for this breach of contract claim." (Respondents' Post Hearing Brief, p. 46 [citation omitted].)

Claimant's claim for breach of Section 10 of the Amendment is therefore DENIED.

5.    <u>Breach of Sec. 15 of the Amendment by Disparaging, Calling into Disrepute, and/or Criticizing Claimant to Third Parties</u>

Claimant alleges that it suffered damages as a result of various statements made by Respondents—specifically, statements made by Margolin to both Claimant's customers and the factories that manufactured Claimant's products—all in derogation of Section 15 of the Amendment.[13]

After a careful review of the evidence, I find that Claimant has not met its burden to prove that Respondents made any statements that publicly disparaged Mr. Bar-B-Q or directly and proximately caused damages to Claimant. While the statements Claimant cites as defamatory were not flattering or complimentary, the evidence offered by Claimant did not convince the Tribunal (i) that the statements were publicly disparaging, (ii) that the statements were the proximate cause of financial damages suffered by Claimant, or (iii) that Claimant proved monetary damages arising from such statements with any degree of specificity.

Having so found, Claimant's claims for breach of Section 15 of the Amendment are

---

[13] Section 15 of the Amendment states:
   Subject to applicable law, each of the Parties covenants and agrees that neither it nor any of its respective agents, subsidiaries, affiliates, successors, assigns, officers, key employees or directors, will in any way publicly disparage, call into disrepute, defame, slander or otherwise criticize the other Party or the other Party's subsidiaries, affiliates, successors, assigns, officers, directors, employees. shareholders, agents, attorneys or representatives, or any of the other Party's products or services, in any manner that would damage the business or reputation of the other Party, its products or services, or its subsidiaries, affiliates, successors, assigns, officers, directors, employees. shareholders, agents, attorneys  or representatives.

DENIED.

      6.    <u>Breach of Sec. 16 of the Agreement by the Unauthorized Use of Confidential</u>

<u>Information</u>

Mr. Bar-B-Q claims that USL breached "Section 16 of the Agreement by using Mr. Bar-B-Q's confidential business information to advance USL's competing business" (*See* Claimant's Pre-Hearing Opening Brief, p. 11, item (ii)).

As noted in Respondents' Post Hearing Brief, Mr. Bar-B-Q complains that:

> Mr. Margolin used Mr. Bar-B-Q's confidential customer lists, product specifications, order histories, and the like to contact every one of Mr. Bar-B-Q's customers to make them an offer that he believed they could not refuse—USL will sell you the exact same products that Mr. Bar-B-Q sold you, from the same factories you already approved and purchased products from in the past, at prices that will eeliminate Mr. BBQ's entire profit margin.

After a thorough review of the record, I am convinced that the weight of the evidence favors Respondents' view that Mr. Bar-B-Q failed to carry its burden of proving that USL breached Section 16.

In reaching this conclusion, I note that the Amendment allowed USL to quote customers some of the same items that Claimant had quoted to its customers (Tr. 1541:22-1544:7 (Guadagno)), and Section 8 of the Amendment states that "such conduct shall not constitute a violation of the Amendment of the Services Agreement." Indeed, Section 8 allowed Respondents to quote customers the same or similar items that Mr. Bar-B-Q had quoted to its customers.

I also note that before 2013, USL did not have a formal agreement with Mr. Zemel's former company, Mr. Bar-B-Q, Inc., that bound Respondents to any confidentiality requirements. Significantly, Claimant did not introduce evidence distinguishing between alleged business information that USL may have learned before and alleged confidential information it may have learned after entering the 2013 Services Agreement. I agree with Respondents that in the absence

13

of such evidence, "Mr. BBQ has failed to carry its burden of proving that USL breached paragraph 16 of the Agreement." (*See* Respondents' Post Hearing Brief at 33.)

Also, I note that the identity of Claimant's customers and customers for barbeque accessories is generally known in the industry or publicly available. Consequently, use of that information does not violate confidentiality restrictions in the Agreement. Product specifications—size, materials used, function, and packaging details—were readily available to anyone who could purchase, examine, or even view an item. Additionally, evidence was adduced during the proceeding that Respondents never revealed what is arguably confidential pricing information (i.e., what Mr. Bar-B-Q paid USL for the accessory products in question). It appears also that in the barbeque accessory industry, a seller's pricing information is of questionable confidentiality, as such information is readily available for the asking and is generally shared among retail store buyers and others.

Finally, Claimant failed to prove or convince the Tribunal that Mr. Bar-B-Q suffered monetary damages in the form of "price erosion," or lost profits, as the direct and proximate result of Respondents' statements.

Based on the foregoing, I find that Claimant failed to meet its burden of proof or persuasion that Respondents violated Section 16 of the Agreement. Claimant's claims for breach of Section 16 are therefore DENIED.

B.    Claimant's Non-Contract Claims

After a careful review of the record in this proceeding, I find that Claimant has failed to meet its obligation to prove by a preponderance of the evidence that Respondents breached any of the business torts Claimant alleges.[14]

---

[14] These allegations include: (i) unfair competition (infringement of design patents—selling similar or identical products and

14

1.    <u>Unfair Competition</u>

Even though Claimant has stipulated to the dismissal with prejudice of its copyright and design patent claims previously asserted in this proceeding, Claimant nonetheless asserts that Respondents' use of its photographs and designs amount to unfair competition for which it suffered damages.    (*See* Stipulation Concerning Respondents' Use of Claimant's Photographs and Stipulation Concerning Claimant's Claim of Design Patent Infringement, both dated March 9, 2021.)

After a careful review of the record and the law cited by the parties, I find that Claimant's arguments that Respondents engaged in acts of unfair competition by using Mr. Bar-B-Q's copyrighted photos and copying its product designs are misplaced.

a.    <u>Claimant's Photographs</u>

I find that Claimant's unfair competition claim based on Respondents' use of its photographs in Respondents' marketing materials fails.  First, any copyright claims under U.S. law were dismissed by the parties' stipulation (*See* Stipulation Concerning Respondents' Use of Claimant's Photographs.)  Further, Claimant's claim for unfair competition based on state law is preempted by the U.S. Copyright Act (17 U.S. Code § 301.)[15]   (*See* Respondents' Pre-Hearing Brief at 25.) Additionally, Claimant failed to meet its burden to prove that Mr. Bar-B-Q suffered damages as a result of such use.[16]  Claimant's claim for unfair damages for use of its photographs is therefore

---

copyrights—using Claimant's photos to sell USL's products); (ii) tortious interference with prospective business advantage by publishing harmful and false information about Claimant, intended to ensure that customers and factories cease doing business with Claimant; (iii) breach of fiduciary duties as Claimant's agent or otherwise through the conduct alleged by Claimant; and (iv) breach of the covenant of good faith and fair dealing implied in contracts governed by New York law.

[15] Mr. Bar-B-Q has stipulated to dismissal of its copyright infringement claims.

[16] As noted by Respondents on page 15 of their Post Hearing Brief:

At most Mr. BBQ has alleged that two of its photographs appear in photographs of USL's proposed packaging for two items, a grilling topper and a grilling wok (*see* 12.23.20 Zemel Witness Statement, ¶¶ 71 and 72), but there is no evidence that either of these two products was ever sold, much less in the accused packaging.  Mr. Zemel also alleges that "almost all of the photographs used in USL's price quotes appear to come from our inventory of photographs" (*Id.* ¶ 75 . . .), but Mr. BBQ never put its inventory of photographs in evidence, much less compared them to the photographs in USL's price quotes.

DENIED.

    b.    Claimant's Product Designs

After a careful review of the record and the law cited by the parties, I find that Claimant's argument that Respondents unfairly competed by copying and selling products similar or identical to Claimants' products fails as a matter of law.  Also, I agree with Respondents that in the absence of a patent or other intellectual property protection, copying a competitor's product, even identically, is permitted.[17] (*See Sears Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 231-32 (1964).). In addition, I note that Claimant has failed to prove damages proximately and directly caused by such copying specific to this claim.[18]  Claimant's claims for unfair competition based on Respondents' use of its product designs are therefore DENIED.

    2.    Tortious Interference with Prospective Business Advantage

Claimant claims that it suffered damages because Respondents published harmful and false information about Mr. Bar-B-Q to third parties, intended to ensure that customers and factories cease doing business with Claimant.

I find that Claimant's claims for tortious interference with prospective business advantage due to these alleged statements[19] arise out of and "are grounded in the same conduct" as the acts it pleaded with respect to its breach of contract claims (alleging breach of Section 15 of the Amendment) noted in paragraph IV.A.5 above, which for the reasons cited there were denied.

Therefore, I conclude that because Mr. Bar-B-Q does not here allege violation of a legal duty separate and independent of its contract claims for Respondents' violation of Section 15 of the

---

[17] Mr. Bar-B-Q has stipulated to dismissal of its patent infringement claims.  Mr. Bar-B-Q has not asserted that its products have any other intellectual property protection.
[18] "Under New York law, 'damages' is an essential element of unfair competition claims." *See eCommission Sols, Inc. v. CTS Holdings Inc.*, No. 18-1672-cv, 2019 U.S. App. LEXIS 15693, at *4 (2nd Cir. May 28, 2019) (citations omitted).
[19] Claimant also alleges that it suffered damages as a result of Respondents' failure to inform it that Walmart Canada had authorized shipment of product.

16

Amendment, Mr. Bar-B-Q's tortious interference claim is misplaced.  (*See Uitz v. Lustigman Firm, P.C.*, no. 13Civ6040, 2014 U.S. Dist. LEXIS 105668, at *8 (S.D.N.Y. July 28, 2014); *JHH Pictures, Inc. v. Rawkus Entertainment LLC*, 291 A.D.2d 356, 357 (N.Y. App. Div. 2002); *Clark-Fitzpatrick, Inc. v. Long Island Rail Road Company*, 70 N.Y.2d 382, 389 (N.Y. 1987).)

Claimant's claims for tortious interference with prospective business advantage are therefore DENIED.

3.    <u>Breach of Fiduciary Duty and the Implied Covenant of Good Faith and Fair Dealing</u>

Claimant asserts that USL was an agent of Claimant and owed it fiduciary duties that it breached through the acts and misconduct alleged in Claimant's pleadings. Claimant also alleges that such behavior breached the implied covenant of good faith and fair dealing under New York law.

a.    <u>Breach of Fiduciary Duties</u>

Having carefully reviewed the evidence and the record in this case, I find that Claimant has failed to carry its burden to prove or convince the Tribunal that USL was an agent of Claimant or that USL owed Mr. Bar-B-Q fiduciary duties.  In arriving at this conclusion, I am persuaded by the strong and unequivocal language of the Agreement that specifically acknowledges that the parties are independent contractors.[20]  In the absence of agreement between the parties or extraordinary circumstances that create fiduciary duties, the Tribunal will not imply the existence of such a

---

[20] Section 17 of Agreement reads:

<u>Independent Contractor</u>.  The  Parties  hereto  are independent contractors, solely responsible for their own employees and not in partnership or joint venture with each other or with any employee of the other Party, and neither Party will hold itself out as, or give any person reason to believe that it is an agent or employee or otherwise under the control of the other Party or its employees.

17

relationship.[21]  I find that Claimant has failed to prove or convince the Tribunal of the existence of either.

However, even assuming arguendo that USL owed Claimant fiduciary duties, such duties would have ended when the relationship turned adversarial.[22]  I find that USL's notice of termination of the Agreement in November 2019 created an adversarial relationship between the parties and effectively ended any alleged fiduciary duties of USL.  It appears from the record that the alleged breaches of fiduciary duties as stated in Claimant's letter to the Tribunal all occurred after the relationship became adversarial.

Furthermore, Claimant's claims of breach of fiduciary duties are grounded in the same acts as its contract-related allegations and are therefore impermissible as duplicative of its breach of contract claims.[23]  (*See also* Respondents' Post Hearing Brief at 11 and n. 8.)

    b. <u>Breach of the Covenant of Good Faith and Fair Dealing Implied Under New York Law</u>

After review of the evidence and the parties' filings, the Tribunal finds that Claimant's allegations that Respondent USL breached the covenant of good faith and fair dealing in Paragraph 19 of Claimant's Fourth Amended Supplement are not supported by the evidence.

"New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts,

---

[21] *See Northeast Gen. Corp. v. Wellington Adv.*, 82 N.Y.2d 158, 162 (N.Y. 1993) ("If the parties . . . do not create their own relationship of higher trust, courts should not ordinarily transport them to the higher realm of relationship and fashion the stricter duty for them."); *see also* ICDR Article 31(2*)* ("In arbitrations involving the application of contracts, the tribunal shall decide in accordance with the terms of the contract and shall take into account usages of the trade applicable to the contract.").

[22] Once a relationship turns adversarial, there can no longer be a fiduciary relationship.  *Genger v. Genger*, 121 A.D.3d 270, 278 (N.Y. App. Div. 2014).

[23] "It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated."  *Clark-Fitzpatrick, Inc. v. Long Island Rail Road Company*, 70 N.Y.2d 382, 389 (N.Y. 1987). "This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract."  *Id*.  Accordingly, under New York law, where a tortious claim is grounded in the same conduct as the breach of contract claim, i.e., failing to perform contractual obligations, the tort claim "should be dismissed as duplicative of the contract based claims." *JHH Pictures, Inc. v. Rawkus Entertainment LLC*, 291 A.D.2d 356, 357 (N.Y. App. Div. 2002) (citations omitted).

is also pled." *See Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 81 (2nd Cir. 2002); *Spread Enters., Inc. v. First Data Merch. Servs. Corp.*, no. 11-CV-4743, 2012 U.S. Dist. LEXIS 119080, at *10, 13 (E.D.N.Y. Aug. 22, 2012); *see also* Respondents' Opening Pre-Hearing Brief at pp. 20-21 and 23; *see also* n. 22, *supra*.)

I find that Claimant's claim in Paragraph 19 for breach of the implied covenant of good faith and fair dealing arises out of the same facts alleged in its breach of contract claims in Paragraphs 1, 2, 4, and 6-9 and is thus duplicative of those claims. (*See also* n. 24, *supra*.)

Claimant's claims for breach of the covenant of good faith and fair dealing are therefore DENIED.

C.    Respondents' Counterclaims

Respondent USL in its counterclaim against Claimant asserts that Mr. Bar-B-Q has breached its contractual obligations by failing to:

1. Pay 142 USL invoices for goods ordered and shipped pursuant to the Agreement in the amount of $4,304,896.13, for commissions due USL on those invoices, and for reimbursable expenses incurred by USL. (*See* USL's Counterclaim, ¶¶ 8-19)[24]; and

2. Purchase USL's inventory that remained upon expiration of the parties' contract, as provided in the Agreement.[25]  Respondent initially claimed the following sums: $4,462,798.72 for USL's invoice 4188 for product inventory (*Id*., ¶¶ 17-21), $77,397.18 for USL's invoice 4190 for

---

[25] Section 27 of the Agreement provides that "[u]pon expiration or termination of this Agreement, Mr. BBQ shall be obligated to purchase from USL any items that, prior to such termination or expiration, Mr. BBQ ordered pursuant to Purchase Orders or other written documentation."

print and packaging inventory (*Id.*, ¶ 24), and $859,181.98 for USL's invoice 4189 for additional finished and unfinished product inventory (*Id.*, ¶¶ 20-25).[26]

As noted elsewhere herein, the parties are currently in discussions with the Tribunal to determine how much of the inventory in question was produced, purchased by Claimant, and/or remains in inventory with third parties. Consequently, the Tribunal defers a ruling and possible award with regard to this issue, and the Tribunal retains jurisdiction to determine all questions relating to the inventory issues presented in this proceeding and that are part of its record.

    D.    <u>Summary of Claims and Counterclaims</u>

Based on a careful and extensive review of the evidence, I find that USL has met its burdens of proof and persuasion by a preponderance of the evidence and established the claims for breach of Mr. Bar-B-Q's obligations to pay the sums referred to above: $4,304,896.14 for unpaid invoices for products made and shipped on Mr. Bar-B-Q's behalf and reimbursable expenses, plus interest at the contractual rate of 2% for each month or part thereof that each such invoice remains unpaid.

In reaching these conclusions, I find that Respondent USL has established the elements of a cause of action to recover damages for breach of contract. Respondents have met their burden of proof and persuasion by a preponderance of the evidence to show as follows: (1) the Agreements are in full force and effect, (2) Respondent USL has performed its obligations under the Agreements, (3) Claimant has breached its contractual obligations by failing to pay the invoices in question, and (4) Respondent USL suffered damages resulting from the breach by reason of Claimant's having failed to pay sums due and owing. (*See Meyer v. New York-Presbyterian Hosp. Queens*, 167 A.D.3d 996, 997 (N.Y. App. Div. 2018).)

---

[26] *See also* RX41 (invoice 4188) and RX46-49 (backup for invoice 4188); RX56 (invoice 4190) and RX57 (backup for invoice 4190); RX59 (invoice 4191); and Tr. 1419:11-1421-23.

20

I also find that Claimant is obligated to purchase the inventory itemized in Invoices 4188, 4190, and 4191 in an amount to be determined by the Tribunal upon completion of ongoing hearings. The Tribunal reserves jurisdiction over all remaining issues regarding inventory and potential awards of interest and the cost of this arbitration, including attorney's fees and costs, the administrative fees of the AAA-ICDR and the Tribunal's compensation fees.

Claimant's excuses for not paying the 142 invoices—that Respondents were in breach of the Agreements because Respondents were liable for tortious acts—were discussed above. In this Partial Final Award, I have found that Claimant failed to meet its burden of proof or persuasion that Respondent USL breached the Agreements or that Respondents were liable for the tortious behavior and the resulting damages Claimant alleged. I further found that Claimant failed to establish it suffered the damages it claims with the required specificity or that it connected any diminution in its revenues to Respondents' alleged breaches of contract or tortious acts. Finally, I agree with Respondents' view that Claimant's reason for failing to pay USL's 142 invoices—that USL allegedly breached its fiduciary duties to Claimant and that USL committed multiple breaches of the Agreements—fails as a matter of law.[27]

V.    PARTIAL FINAL AWARD

For the reasons stated above, I award and order as follows:

---

[27] As noted by Respondents, where a party to a contract accepts performance by the other party, it cannot avoid paying for that performance by alleging that the performing party breached some other provision of the contract. The party accepting performance may be entitled to damages for other alleged breaches, but that does not excuse its obligation to pay the performing party for services rendered and accepted. *See Computer Possibilities Unlimited, Inc. v. Mobil Oil Corp.*, 301 A.D.2d 70, 80 (N.Y. App. Div. 2002) ("where one party to a contract repudiates its obligations thereunder, the other party may either treat the contract as terminated or, alternatively, affirm thecontract, and, if the latter option is chosen, the non-repudiating party is deemed to remain obligated to perform under the contract"). *See also* Respondents' Opening Pre-Hearing Brief pp. 15-16.

A.      Claimant Mr. Bar-B-Q's claims for breach of contract and tortious acts by Respondents and its requests for monetary and injunctive relief are DENIED.

B.      Respondent USL's counterclaim with respect to the 142 invoices noted above is GRANTED. Within 30 days from the date of transmittal of this Partial Final Award to the parties through their counsel, Claimant Mr. Bar-B-Q shall pay to Respondent USL the sum of US$4,304,896.14 for monetary damages for breach of its obligations to pay the 142 invoices; Claimant shall also at that time pay to Respondent USL interest calculated at the contractual rate of 2% for each month or part thereof that each such invoice remains unpaid. The parties should raise any issues regarding calculation of the amount of the awarded interest with the Arbitrator within 10 days from the transmittal of this award to the parties.

C.      Tribunal's decision regarding Respondent USL's counterclaim asserting that Claimant is obligated to purchase inventory in accordance with Section 27 of the Agreement is DEFERRED.   The parties should submit further evidence for the Tribunal's consideration of the existence of inventory, the amount of such inventory purchased by Claimant, and the amount of inventory remaining to be purchased, as well as any other matters or issues directed by the Arbitrator within 10 days from the transmittal of this award to the parties.

D.      Given the Tribunal's findings in this Partial Final Award, Respondents are the prevailing party in this proceeding under Section 22 of the Agreement, and per the parties' agreement are "entitled to [Respondents'] reasonable attorney's fees and costs, including fees for the arbitration and the arbitrator's fees." Within 10 days after a final ruling of the Tribunal on all outstanding issues relating to Claimant's obligations to purchase inventory in accordance with Section 27 of the Agreement and interest calculations hereunder, Respondents as the prevailing party may file with the Tribunal an application for their claims relating to the Tribunal's award of

attorney's fees and costs. The application shall include reasonable documentation supporting the financial claims contained therein. Mr. Bar-B-Q may, within 10 days of its receipt of Respondents' submission, file a response or opposition thereto.

E.    The Tribunal reserves the right and retains jurisdiction to consider the issues outlined in paragraphs B, C and D above, as well as the allocation of the administrative fees of the AAA-ICDR and the Tribunal's compensation fees, and to then render its Final Award.

VI.    <u>ARGUMENTS AND EVIDENCE NOT SPECIFICALLY REFERENCED</u>

The findings made by the Tribunal here are the findings necessary to support this Award. Any failure to address a specific argument or cite some particular evidence or authority that either party cited should not be taken as an indication that the Tribunal did not consider the evidence and authority. In fact, my review of the record has been extensive and comprehensive, and all claims and defenses were given careful and full consideration in arriving at this Partial Final Award.

This PARTIAL FINAL AWARD, while not a final award, shall nonetheless have full force and effect until such time as the Tribunal enters a FINAL AWARD.

I hereby certify that, for purposes of Article I of the New York Convention of 1958, on the Recognition and Enforcement of Foreign Arbitral Awards, this Partial Final Award was made in New York, New York, United States of America.


_Stephen S. Strick_                    Date:    June 9, 2021
Stephen S. Strick, Arbitrator


I, Stephen S. Strick, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Partial Final Award.

23

_Stephen S. Strick_
Stephen S. Strick