# Exhibit E

# Fourth Amended Supplement to Notice of Arbitration

# FOURTH AMENDED SUPPLEMENT DATED FEBRUARY 3, 2021 TO NOTICE OF ARBITRATION DATED JUNE 4, 2020

BETWEEN:

MR. BAR-B-Q PRODUCTS LLC

(CLAIMANT)

-AND-

UNION SQUARE LIMITED and WAYNE MARGOLIN

(RESPONDENTS)

Dated: February 3, 2021

Respectfully submitted,
MARK B. STUMER & ASSOCIATES, P.C.

Mark B. Stumer, Esq.
Attorney for Claimant
306 Fifth Ave, Penthouse
New York, New York 10003
(212) 633-2225

Greater detail may be provided in the Statement of Claims and/or a further Amended Supplemental Notice to be filed at a later date, but generally, the (I) Nature of the Dispute and (II) Overview of the Claims and Relief Sought are as follows:

## I. NATURE OF THE DISPUTE

The dispute arises out of a Services Agreement dated July 27, 2018 (as amended March 29, 2019, August 21, 2019 and October 29, 2019) entered into by and between Mr. Bar-B-Q Products LLC ("Claimant"), a New York limited liability company and Union Square Limited, a Hong Kong corporation ("USL"), the "Agreement".   Wayne Margolin is the owner of USL ("Margolin").  USL and Margolin are collectively referred to as "Respondent(s)".

For over 25 years, USL was the Claimant's exclusive agent for sourcing Claimant's barbeque accessory products with factories located in The People's Republic of China.  USL was paid a commission by Claimant on each order fulfilled and delivered by USL.  This relationship was memorialized in writing in the Agreement.  In November 2019, Respondent sent notice to Claimant terminating the relationship effective March 31, 2020.   Claimant soon discovered the reason for the termination was because Respondent was directly competing with Claimant in direct breach of the original Agreement.  As a result, the Parties entered into the February 4, 2020, amendment to the Agreement (the "Amendment") providing for the wind down of the relationship between the parties.   The Amendment, in pertinent part, restricted certain marketing and competitive behavior on the part of USL, addressed the return of Claimant's molds and tooling, and included a mutual non-disparagement clause.  However, despite the terms contained in the Amendment, the Respondents continued their malicious campaign designed to destroy the Claimant's business while directly competing with the Claimant and further while acting as the agent for the Claimant.

## II. GENERAL OVERVIEW OF CLAIMS AND RELIEF SOUGHT

With regards to each and every breach of contract claim asserted below, Claimant asserts that both the Agreement and the Amendment are valid and binding contracts and that Claimant had performed in accordance with the terms of the Agreement and the Amendment.

1. Breach of Contract as against USL: In violation of Sec. 2 of the Amendment, Respondent failed to fulfill multiple purchase orders that were submitted to them by the Claimant on or prior to April 15, 2020.  Specifically, Respondent claimed that Claimant owed them money and that Respondent was refusing to ship said orders without being paid a sum certain.  However, the statements submitted by Respondent to Claimant regarding the amounts allegedly owed were grossly inaccurate.  In good faith, Claimant spent many hours correcting the errors in Respondents statements.  Claimant would then point out the billing "errors" made by Respondent and would attempt to pay the correct amount. Unfortunately, Respondent continued to send grossly inaccurate (and inconsistent) statements and continued to refuse to fulfill said purchase orders because Claimant

refused to pay the grossly inaccurate amount being demanded. As a result, the Claimant has been damaged in an exact amount to be determined during the arbitration of this claim but in no event less than $415,000.00.

2. Breach of Contract as against USL: Resulting from USL marketing competitive items prior to April 1, 2020, as prohibited by Sec. 8 of the Amendment. Specifically, USL had marketed competitive items to many of Claimant's customers prior to April 1, 2020, including but not limited to VM International, and HEB. As a result, the Claimant has been damaged in an exact amount to be determined during the arbitration of this claim.

3. INTENTIONALLY OMITTED.

4. Breach of Contract as against USL: Resulting from USL's failure to arrange and coordinate the return of Claimants proprietary molds and tooling as required by Sec. 7 of the Amendment. Pursuant to Sec. 7 of the Amendment, on March 2, 2020, Respondent prepared a list of over 460 of Claimant's proprietary molds that were supposed to be returned to Claimant by Respondent. To date, despite Claimants repeated attempts to get their molds, only three working molds were returned along with assorted pieces to another forty molds. Respondent was aware that these molds are required for the production of Claimants products and Respondent intentionally failed to return them in a deliberate effort to harm the Claimant's business and to gain an advantage for their new business which was directly competitive to that of the Claimant. Claimant repeatedly attempted to receive their proprietary molds from Respondents and Respondents would either (i) intentionally delay and prolong the pick-up of the molds, (ii) arrange for different (less desirable) product molds to be picked up, (iii) provide unusable destroyed molds, (iv) have no molds available for pick up despite informing Claimant that they were ready and waiting for pick up, or (v) provide molds with missing required pieces. As a result, the Claimant has been damaged in an exact amount to be determined during the arbitration of this claim but in no event less than $1,630,000.00.

5. INTENTIONALLY OMITTED.

6. Breach of Contract as against USL: Resulting from USL's use of Claimants samples on and after April 1, 2020, as selling tools to promote or market its new venture as prohibited by Sec. 10 of the Amendment. As a result, the Claimant has been damaged in an exact amount to be determined during the arbitration of this claim.

7. Breach of Contract as against USL: In violation of Sec. 15 of the Amendment, Respondent disparaged and/or called into disrepute and/or criticized Claimant to multiple third parties including, but not limited to, the Claimant's customers. Respondents' criticism and disparagement of Claimant led to the direct loss of Walmart Canada and Target Everyday, both long-standing customers of the Claimant. With regards to Target, Respondent stated, among other things, that Claimant's factories would no longer be doing business with the Claimant and Claimant would no longer be able to fulfill its orders. Respondents' statements were made by Respondent Wayne Margolin and USL employee Daphanie Chan on April 2, 2020 via a telephone call to Shermie Liu a Target

sourcing agent. The Respondents' statements understandably caused great concern to Target and as a direct result of Respondents' statements, Target informed the Claimant that they would no longer be receiving Target's Everyday barbecue accessory business. Target's Everyday barbecue accessory business was a consistent long-standing product line fulfilled by the Claimant for over 14 years. With regards to Walmart Canada, in addition to the conduct committed by Respondents as specified in Claim 20, the Respondent also stated to Walmart Canada among other things that Claimant committed, ". . .an intentional breach Wal-Mart's Compliance code," and ". . .that my factories refuse to do business with Mr. BBQ," and, ". . .other major retailers are terminating Mr. BBQ as a vendor and transferring orders to USL." As a result, Claimant has been damaged in an exact amount to be determined during the arbitration of this claim but in no event no less than $3.7 million.

8. Breach of Contract as against USL: In violation of Sec. 15 of the Amendment, Respondent had disparaged the Claimant to at least five of the factories in China that produced Claimants products and further instructed these factories to immediately and permanently cease working with the Claimant. As a result, the Claimant has been damaged in an exact amount to be determined during the arbitration of this claim.

9. Breach of Contract as against USL: Resulting from Respondent's use of Claimant's confidential information in their marketing to prospective customers as prohibited by Sec. 16 of the Agreement. Claimants confidential information used by USL includes, but is not limited to, Claimant's margin information, pricing and costs for their products. This use of confidential information will force Claimant to renegotiate and lower its pricing with its customers thereby eroding Claimant's pricing and profits costing Claimant a significant amount of damages. As a result, the Claimant will be damaged in an exact amount to be determined during the arbitration of this claim but is projected to between $800,000 and $7.4 million.

10. Defamation as against Margolin: Mr. Margolin's statements to Target as detailed in Par. 7 above were defamatory in that they were false statements published to a third party without privilege or authorization with fault amounting to at least negligence which caused the Claimant special harm and significant financial damages. As a result, the Claimant has been damaged in an exact amount to be determined during the arbitration of this claim but in no event less than $2.4 million.

11. Defamation Per Se as against Margolin: The statements Mr. Margolin made to Target as detailed in Par. 7 above were defamatory per se in that they were false statements published to a third party without privilege or authorization with fault, amounting to at least negligence, which injured the Claimant with respect to their business. As a result, the Claimant has been damaged in an exact amount to be determined during the arbitration of this claim but in no event less than $2.4 million.

12. Design Patent Infringement as against Respondents: Respondents had made multiple offers to sell products that directly infringed upon the Claimant's patent rights. These offers to sell were made to at least one of the Claimants customers in writing and

constituted separate and distinct claims of patent infringement of at least the following design patents:

i)   D 658,434 (USL Infringing Product No. 78810HEBGD);
ii)  D 658,937 (USL Infringing Product No. 7880HEBGC and 78809HEBGD);
iii) D 665,236 (USL Infringing Product No. 90059HEB);
iv)  D 678,005 (USL Infringing Product No. 10034);
v)   D 668,506 (USL Infringing Product No. 30205GD);
vi)  D 699,949 (USL Infringing Product No. 20212GD-6);
vii) D 840,749 (USL Infringing Product No. 40451);
iix) D 883,734 (USL Infringing Product No. 46014 and 46013); and
ix)  D7 69,101 (USL Infringing Product No. 30133).

Respondents were in the unique position to easily copy all of Claimant's design patents because Respondents possessed all of Claimant's manufacturing molds and tooling. Respondents have also represented to customers of Claimant that it plans to pirate and commit fraud on Claimant's design patents by making minor changes to Claimant's molds. Further facts regarding this claim will be disclosed during discovery in this arbitration. As a result, the Claimant has been damaged in an exact amount to be determined during the arbitration of this claim.

13. Design Patent Infringement as against Respondents: Upon information and belief, Respondents sold products that directly infringed upon the Claimant's patent rights. The applicable patent numbers and corresponding USL infringing product numbers are specified in Claim 12 above. Further facts regarding this claim will be disclosed during discovery in this arbitration. As a result, the Claimant has been damaged in an exact amount to be determined during the arbitration of this claim.

14. INTENTIONALLY OMITTED.

15. Tortious Interference with Prospective Business Advantage as against Respondents: In addition to the above referenced conduct by the Respondent, Respondent has communicated with multiple third parties including but not limited to Claimants customers, spreading harmful and false information about the Claimant, all in an intentional effort to ensure that they don't do business with the Claimant. Such conduct was undertaken for the sole purpose of harming the Plaintiff. Such conduct was wrongful or improper independent of the interference caused thereby. As a result, the Claimant has been damaged in an exact amount to be determined during the arbitration of this claim.

16. Tortious Interference with Prospective Business Advantage as against Respondents: In addition to the above referenced conduct by the Respondent, Respondent had instructed and directed at least five of the factories in China that produced Claimants products to immediately and permanently cease working with the Claimant. This was an intentional act on the part of the Respondent specifically designed to harm the Claimants business.

As a result, the Claimant has been damaged in an exact amount to be determined during the arbitration of this claim.

17. Unfair Competition as against Respondents: Resulting from Respondents bad faith misappropriation of the labor and expenditures of the Claimant by using Claimant's photographs in their marketing materials and by offering to sell and selling products that are so strikingly similar, and in some instances identical, to the Claimants. As a result, the Claimant has been damaged in an exact amount to be determined during the arbitration of this claim.

18. Breach of Fiduciary Duty as against Respondents:  The Respondent was an agent of the Claimant and as such owed a fiduciary duty to the Claimant. The conduct committed by the Respondent as stated in this amended supplement constituted misconduct and a breach of the fiduciary duty owed to the Claimant.  Claimant was significantly injured as a direct result of the Respondents misconduct and breach of duty.  As a result, the Claimant has been damaged in an exact amount to be determined during the arbitration of this claim.

19. Breach of Covenant of Good Faith and Fair Dealing as against Respondents: In New York, all contracts impose upon its parties a duty of good faith and fair dealing in its performance and its enforcement.  This implied covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.  The Respondents actions as specified in this amended supplement had the effect of destroying or injuring the right of the Claimant to receive the benefits of the Amendment and the Agreement. As such, Respondent has breached the implied covenant of good faith and fair dealing.  As a result of this breach, the Claimant has been damaged in an exact amount to be determined during the arbitration of this claim.

20. Tortious Interference with Prospective Business Advantage as against Respondents: In addition to the above referenced conduct by the Respondents, Respondents have intentionally failed to notify Claimant that Walmart International authorized the shipment of certain orders made with the Claimant.   Rather than notifying Claimant, Respondents informed Walmart International that Mr. BBQ has not been paying USL but that USL could still ship the orders directly to them, at a much less cost than they had paid Mr. BBQ in the past, if they added Respondent as a vendor.  This was an intentional act on the part of the Respondents specifically intended to cause Claimant the loss of its orders and customer.  Such conduct was undertaken for the sole purpose of harming the Plaintiff.  Such conduct was wrongful or improper independent of the interference caused thereby. As a result, the Claimant has been damaged in an exact amount to be determined during the arbitration of this claim but is likely to be at least $1.4 million.

21. Copyright Infringement as against Respondents:  For many years Claimant has taken and acquired numerous photographs of its products and related BBQ images.  Claimant's photographs are entitled to copyright protection and Claimant is currently preparing

    copyright registrations for its photographs to be filed with the Copyright Office. Respondents have used, and are believed to be continually using, Claimant's copyrighted photographs without permission from Claimant. Damages are anticipated to be at least a reasonable royalty as well as lost profits for any sales Respondents have made using Claimant's copyrighted photographs without permission.

For the avoidance of doubt, the above is meant to be an overview of the Claims in this arbitration and Claimant reserves its right to:

    i. raise any and all further claims arising out of or in connection with the disputed matters described in this Fourth Amended Supplemental Notice of Arbitration or otherwise arising between the Parties; and

    ii. amend and/or supplement the relief sought herein;

    iii. produce such factual or legal arguments or evidence (including witness testimony, expert testimony and documents) as may be necessary to present its case or rebut any case which may be put forward by Respondent; and

    iv. seek interim and provisional measures before this arbitral tribunal or any competent court.

Dated: February 3, 2021

    Respectfully submitted,
    MARK B. STUMER & ASSOCIATES, P.C.

    _____

    Mark B. Stumer, Esq.
    Attorney for Claimant
    306 Fifth Ave, Penthouse
    New York, New York 10003
    (212) 633-2225