# Exhibit F

# Answering Statement to Claimant's Fourth Amended Supplement

**ICDR Case Number: 01-20-0005-4914**

_____

**MR. BAR-B-Q PRODUCTS LLC**

        **(Claimant -Counterclaim Respondent)**

   v.

**UNION SQUARE LIMITED (Respondent-Counterclaimant) and**

    **WAYNE MARGOLIN    (Respondent)**

_____

**Answering Statement by Respondents Union Square Limited and Wayne Margolin to Claimant's Fourth Amended Supplement Dated February 3, 2021, to Notice of Arbitration Dated June 4, 2020**

Dated: February 26, 2021

                                            Respectfully submitted,

                                            Davis Firm, P.C.
                                            Counsel for Respondent-Counterclaimant
                                            Union Square Limited and Respondent
                                            Wayne Margolin

                                            Martin Pavane, Esq.
                                            Ed Chin, Esq.
                                            213 N. Fredonia Street, Suite 230
                                            Longview, Texas 75601
                                            903-230-9090 (office)
                                            917-539-7313 (cell for Martin Pavane)
                                            mpavane@davisfirm.com
                                            echin@davisfirm.com

1

This is Respondents' Answer to Claimant's Fourth Amended Supplement Dated February 3, 2021, to Notice of Arbitration Dated June 4, 2020 ("Claimant's Fourth Amended Supplement").

Respondents Union Square Limited ("USL") and Wayne Margolin ("Margolin") respond to the allegations in Claimant's Fourth Amended Supplement as follows:

## I. NATURE OF THE DISPUTE

Respondents admit that this dispute arises out of a Services Agreement ("Agreement") dated July 27, 2018 (as amended March 29, 2019, August 21, 2019, and October 29, 2019) entered between Claimant Mr. BBQ and Respondent USL, but state that it also arises out of an Amendment to Services Agreement dated February 4, 2020 ("Amendment").

Respondents admit that Wayne Margolin owns USL.

Respondents admit that commencing on or about July 27, 2018, USL was the exclusive services supplier of barbecue accessories to Mr. BBQ, with responsibility for selecting suitable manufacturers (including factories located in The People's Republic of China), negotiating product costs, paying manufacturers, providing quality control, managing the manufacturers, product testing, preparing product packaging, packing containers, preparing export documents, executing shipments, coordinating logistics, and providing all other services necessary to purchase and deliver product to Mr. BBQ's designated agent or freight forwarder.

Respondents deny that for over 25 years USL was the exclusive services supplier for Claimant, but admit that for over 20 years prior to July 27, 2018, USL was the exclusive services supplier for Claimant's predecessors.

Respondents admit that USL is located in Hong Kong.

Respondents deny that USL was Mr. BBQ's "exclusive agent for sourcing" or sourcing "agent" in the legal sense of that term and note that the Agreement expressly provides that the parties are independent contractors and not agents of each other.

Respondents admit that USL was entitled to a commission on each order fulfilled and delivered by USL, but denies that all such commissions have been paid, and state that USL seeks payment of such unpaid commissions by way of its counterclaim in this arbitration.

Respondents admit that the relationship between USL and Mr. BBQ was memorialized in writing in the Agreement.

Respondents admit that in November 2019, USL sent a notice to Mr. BBQ terminating the Agreement effective March 31, 2020, deny that the decision to terminate originated with USL, and

state that USL sent the notice of termination to Mr. BBQ only after Mr. BBQ advised USL in writing that Mr. BBQ did not want to continue the Agreement.

Respondents deny that USL terminated the Agreement because USL was directly competing with Mr. BBQ, reiterate that it was Mr. BBQ that decided that Mr. BBQ and USL should terminate the Agreement, and deny that USL directly competed with Mr. BBQ in direct breach of the Agreement.

Respondents admit that USL and Mr. BBQ entered an Amendment to Services Agreement with an effective date of February 4, 2020, which provided for the winddown of the relationship between USL and Mr. BBQ.

Respondents state that the Amendment speaks for itself; admit that among other things, the Amendment limited certain competitive behavior by USL until the Agreement terminated on March 31, 2020, after which date the Amendment expressly acknowledged USL's right to compete directly with Claimant; addressed the return of Mr. BBQ's molds from the factories in China where the molds were located; included a mutual non-disparagement clause; and further provided that Mr. BBQ would pay USL's invoices within time limits set in the Amendment, but state that Mr. BBQ failed to honor its payment obligations and that USL is seeking payment of those unpaid invoices in the amount of $4,276,740.54 by way of its counterclaim in this arbitration.

Respondents deny that USL engaged in a "malicious campaign designed to destroy the Claimant's business while directly competing with the Claimant;" deny that USL acted as the "agent" for Claimant in the legal sense of that word, and note that the Agreement expressly provided that the parties were independent contractors and not agents of each other; and state that Mr. BBQ sought to prevent competition by USL as expressly permitted by the Amendment by refusing to pay USL millions of dollars of invoices issued by USL to Mr. BBQ, knowing full well that USL needed those funds to finance its new business.

Respondents deny each and every allegation in the "Nature of the Dispute" section of Claimant's Fourth Amended Supplement not expressly admitted hereinabove.

## II. GENERAL OVERVIEW OF CLAIMS AND RELIEF SOUGHT

a. Responding to Claimant's claim for breach of contract against USL in paragraph 1, USL admits that it did not fulfill certain purchase orders submitted by Claimant to USL on or prior to April 15, 2020, but denies that such conduct violated Section 2 of the Amendment; admits that as specifically permitted by the Agreement, USL withheld fulfillment of such purchase orders because Claimant failed to timely pay invoices as required by the terms of the Amendment; denies that USL demanded payment of a "sum certain"; denies that USL submitted statements to Claimant that were "grossly inaccurate"; and denies that statements were a prerequisite to Mr. BBQ's payment obligation which, under the terms

3

of the Amendment, were required within a fixed period of time after issuance of invoices, not statements, and Claimant has not alleged that USL's invoices were inaccurate; lacks knowledge or information sufficient to form a belief as to whether Claimant, "in good faith," spent many hours correcting errors in USL's statements and therefore denies same; denies that Claimant made an "attempt to pay the correct amount"; denies that USL continued to send "grossly inaccurate (and inconsistent) statements"; denies that USL refused to fulfill orders because Claimant "refused to pay the grossly inaccurate amount being demanded," but admits that USL refused to fulfill orders because Claimant refused to pay invoices when due as required by the terms of the Amendment; denies that Claimant is entitled to any damages on this claim for breach of contract; and denies any remaining allegations of paragraph 1.

b. Responding to Claimant's claim for breach of contract against USL in paragraph 2, USL denies that it "market[ed] competitive items" prior to April 1, 2020; denies that it marketed competitive items to VM International or HEB prior to April 1, 2020; denies that Claimant is entitled to any damages on this claim for breach of contract; and denies any remaining allegations of paragraph 2.

c. Responding to Claimant's claim for breach of contract against USL in paragraph 4, USL denies that it failed to arrange and coordinate the return of Claimant's molds and tooling as required by Section 7 of the Amendment; admits that USL prepared a list of Claimant's molds that were to be returned to Claimant; denies that to date only 3 working molds along with assorted pieces to another 40 molds have been returned to Claimant; admits that USL knew that at least some of the molds were required for production of Claimant's current products, but denies that USL intentionally failed to return the molds in a "deliberate effort to harm the Claimants (sic) business and to gain an advantage" for USL's new business; admits that USL's new business is directly competitive with Claimant's business; denies that Claimant has "repeatedly attempted to receive their proprietary molds" from USL; and states that USL repeatedly emailed Claimant to schedule the return of additional molds but that Claimant ignored USL's emails; denies that USL would either "(i) intentionally delay and prolong the pick-up of the molds, (ii) arrange for different (less desirable) product molds to be picked up, (iii) provide unusable destroyed molds," except admits that some molds may have been unusable due to normal wear and tear, "(iv) have no molds available for pick up despite informing Claimant that they were ready and waiting for pick up, or (v) provide molds with missing required pieces"; denies that Claimant is entitled to any damages on this claim for breach of contract; and denies any remaining allegations of paragraph 4.

d. Responding to Claimant's claim for breach of contract against USL in paragraph 6, USL denies that it used Claimant's samples prior to April 1, 2020 in violation of Section 10 of

4

the Amendment; denies that Claimant is entitled to any damages on this claim for breach of contract; and denies any remaining allegations of paragraph 6.

e. Responding to Claimant's claim for breach of contract against USL in paragraph 7, USL denies that it disparaged and/or called into disrepute and/or criticized Claimant to third parties, including Target, Walmart Canada, or other of Claimant's customers, in violation of Section 15 of the Amendment; denies that any alleged criticism or disparagement by USL led to Claimant's direct loss of Walmart Canada and Target as customers; lacks knowledge or information sufficient to form a belief as to what Target "informed" Claimant and therefore denies same; admits that USL told Target that the factories USL had been using to manufacture products for Claimant would not be working with Claimant; admits that USL made the statements in an April 15, 2020, email from Wayne Margolin of USL to Christina Tan at Walmart Canada; denies that Claimant is entitled to any damages on this claim for breach of contract; and denies any remaining allegations of paragraph 7.

f. Responding to Claimant's claim for breach of contract against USL in paragraph 8, USL denies that it has disparaged Claimant to "at least five of the factories in China that produced Claimant's products"; denies that it instructed such factories to "immediately and permanently cease working with the Claimant"; denies that Claimant is entitled to any damages on this claim for breach of contract; and denies any remaining allegations of paragraph 8.

g. Responding to Claimant's claim for breach of contract against USL in paragraph 9, USL denies that it disclosed any of Claimant's confidential information to various "prospective customers" in violation of Section 16 of the Agreement; denies that USL disclosed to prospective customers any of Claimant's confidential "margin information, pricing and costs" information; lacks knowledge or information sufficient to form a belief as to whether or why Claimant will renegotiate or lower its pricing to its customers, and therefore denies same; denies that any alleged conduct by USL as stated in paragraph 9 has caused or will cause an erosion of Claimant's pricing and profits; denies that Claimant is entitled to any damages on this claim for breach of contract; and denies any remaining allegations of paragraph 9.

h. Responding to Claimant's claim for defamation against Margolin in paragraph 10, Margolin denies that he defamed Claimant by making the communication alleged in paragraph 7 of Claimant's Fourth Amended Supplement; denies that Claimant is entitled to any damages on this claim for defamation; and denies any remaining allegations of paragraph 10.

i. Responding to Claimant's claim for defamation against Margolin in paragraph 11, Margolin denies that he defamed Claimant "per se" by making the communication alleged in paragraph 7 of Claimant's Fourth Amended Supplement; denies that Claimant is entitled

to any damages on this claim for defamation; and denies any remaining allegations of paragraph 11.

j. Responding to Claimant's claim for design patent infringement against Respondents in paragraph 12, Respondents deny that they made "multiple offers to sell products that directly infringed upon Claimant's patent rights"; deny that they made in writing an offer to sell to one of Claimant's customers products that infringed Claimant's patent rights; deny that Respondents represented to Claimant's customers that "it plans to pirate and commit fraud on Claimant's Design patents by making minor changes to Claimant's molds"; deny that any of the Respondents' products identified in paragraph 12 infringe the patents identified in paragraph 12, and note that Respondents do not have a product identified as "7880HEBGC"; deny that Claimant is entitled to any damages on this claim for patent infringement; and deny any remaining allegations of paragraph 12.

k. Responding to Claimant's claim for design patent infringement against Respondents in paragraph 13, Respondents deny that USL sold any products that infringe Claimant's patent rights; deny that any of the USL products identified in paragraph 12 infringe the patents identified in paragraph 12, and note that Respondents do not have a product identified as "7880HEBGC"; deny that Claimant is entitled to any damages on this claim for patent infringement; and deny any remaining allegations of paragraph 13.

l. Responding to Claimant's claim for tortious interference with prospective business advantage against Respondents in paragraph 15, Respondents deny that "Respondent has communicated with multiple third parties including but not limited to Claimants (sic) customers, spreading harmful and false information about the Claimant, all in an intentional effort to ensure that they don't do business with the Claimant"; deny that Claimant is entitled to any damages on this claim for tortious interference; and deny any remaining allegations of paragraph 15.

m. Responding to Claimant's claim for tortious interference with prospective business advantage against Respondents in paragraph 16, Respondents deny that "Respondent had instructed and directed at least five of the factories in China that produced Claimants (sic) products to immediately and permanently cease working with Claimant"; deny that Claimant is entitled to any damages on this claim for tortious interference; and deny any remaining allegations of paragraph 16.

n. Responding to Claimant's claim for unfair competition against Respondents in paragraph 17, Respondents deny that they engaged in bad faith misappropriation of "labor and expenditures" by using Claimant's photographs in their marketing materials or by offering to sell and selling products that are strikingly similar or identical to Claimant's products;

      deny that Claimant is entitled to any damages on this claim for unfair competition; and deny any remaining allegations of paragraph 17.

o. Responding to Claimant's claim for breach of fiduciary duty against Respondents in paragraph 18, Respondents deny that USL was "an agent" of Claimant and as such "owed a fiduciary duty to the Claimant"; deny that the "conduct committed by the Respondent as stated in this amended supplement constituted misconduct and a breach of fiduciary duty owed to the Claimant"; deny that Claimant is entitled to any damages on this claim for breach of fiduciary duty; and deny any remaining allegations of paragraph 18.

p. Responding to Claimant's claim for breach of an implied covenant of good faith and fair dealing against Respondents in paragraph 19, Respondents deny that their "actions as specified in [Claimant's] pleading had the effect of destroying or injuring the right of the Claimant to receive the benefit of the Amendment and the Agreement"; deny that "Respondent has breached the implied covenant of good faith and fair dealing"; deny that Claimant is entitled to any damages on this claim for breach of an implied covenant of good faith and fair dealing; and deny any remaining allegations of paragraph 19.

q. Responding to Claimant's claim for tortious interference with prospective business advantage against Respondents in paragraph 20, Respondents deny that they intentionally failed to notify Claimant that Walmart International authorized the shipment of certain orders made with the Claimant; admit that USL informed Walmart International that Mr. BBQ had not been paying USL and that USL was willing to ship the orders directly to Walmart at a lower cost than it had paid Mr. BBQ in the past, but deny that this was an intentional act by Respondents "specifically intended to cause Claimant the loss of its orders and customer" or that such conduct "was undertaken for the sole purpose of harming" Claimant; deny that such conduct was wrongful or improper; deny that Claimant is entitled to any damages on this claim for tortious interference with prospective business advantage; and deny any remaining allegations of paragraph 20.

r. Responding to Claimant's claim for copyright infringement against Respondents in paragraph 21, admit that for many years Claimant has acquired photographs of its products and related BBQ images; denies knowledge sufficient to form a belief as to whether Claimant is entitled to copyright protection for said photographs or whether Claimant "is currently preparing copyright registrations for its photographs to be filed with the Copyright Office"; deny that Respondents have used or are using Claimant's copyrighted photographs without permission from Claimant, and note that no such photographs are identified in Claimant's Fourth Amended Supplement; deny that Claimant is entitled to any damages on this claim for copyright infringement; and deny any remaining allegations of paragraph 21.

In view of the foregoing, Claimant should be denied relief of any kind for the claims in Claimant's Fourth Amended Supplement, and Respondents should be awarded their reasonable attorneys' fees and costs, including the fees for arbitration and the arbitrator's fees, incurred in defending against Claimant's claims.

### III. AFFIRMATIVE DEFENSES

Respondents' characterization of the following defenses as affirmative defenses is not intended as a representation that they are required to be separately pled as affirmative defenses under controlling law nor is such characterization intended to shift the burden of proof on any claim or defense under controlling law or an admission that Claimant has satisfied any element of any claim. To the extent Claimant has failed to properly state any claim, Respondents reserve the right to supplement their defenses if additional detail concerning such claims becomes known.

**First: Affirmative Defenses to All of Claimant's Breach of Contract Claims**

All of Claimant's claims for breach of contract are barred by Claimant's failure to perform, for example by failing to pay USL's invoices, in accordance with the terms of the Amendment to Services Agreement and the Services Agreement; by Claimant's bad faith in performing its obligations under the Amendment to Services Agreement and the Services Agreement; and by Claimant's failure to mitigate its alleged damages.

**Second: Affirmative Defenses to Claimant's Breach of Contract Claim in Paragraph 1**

Claimant's claim for breach of contract against Respondent USL as alleged in paragraph 1 of Claimant's Fourth Amended Supplement is barred because the Amendment and the Services Agreement expressly permitted the conduct alleged, including allowing Respondent USL to withhold shipments on Claimant's behalf in the event Claimant failed to pay Respondent USL's invoices; because Claimant does not identify any purchase order that was unfulfilled; and because Claimant does not identify any inaccurate or grossly inaccurate statements of an amount owed.

**Third: Affirmative Defenses to Claimant's Breach of Contract Claim in Paragraph 2**

Claimant's claim for breach of contract as alleged in paragraph 2 of Claimant's Fourth Amended Supplement fails to state a cause of action, for example because Claimant does not identify any of the alleged competitive items or state when the alleged marketing occurred.

**Fourth: Affirmative Defenses to Claimant's Breach of Contract Claim in Paragraph 4**

Claimant's breach of contract claim against Respondent USL as alleged in paragraph 4 of Claimant's Fourth Amended Supplement is barred because the Claimant failed to cooperate with Respondent USL in arranging and securing return of the molds and because Claimant unilaterally discontinued all communications with Respondent USL concerning return of the molds, which made it impractical and/or impossible for USL to return the molds as contemplated by the Amendment to Services Agreement.

**Fifth: Affirmative Defenses to Claimant's Breach of Contract Claim in Paragraph 6**

Claimant's breach of contract claim against Respondent USL as alleged in paragraph 6 of Claimant's Fourth Amended Supplement is barred because the Amendment to Services Agreement permitted the conduct alleged, including allowing Respondent USL to use Claimant's samples from USL's showroom as selling tools to promote and market Respondent USL's business on and after April 1, 2020, and fails to state a cause of action because Claimant does not identify any of Claimant's samples that were improperly used as selling tools.

**Sixth: Affirmative Defenses to Claimant's Breach of Contract Claim in Paragraph 7**

Claimant's breach of contract claim against Respondent USL as alleged in paragraph 7 of Claimant's Fourth Amended Supplement is barred because the predicate statements were true or at least substantially true (or was, at least, an opinion) and, to the extent required, was within USL's privilege, including because it was made in response to false representations by Claimant, and fails to state a cause of action because it does not identify how the statements were defamatory or identify a degree of fault for the statements.

**Seventh: Affirmative Defenses to Claimant's Breach of Contract Claim in Paragraph 8**

Claimant's breach of contract claim against Respondent USL as alleged in paragraph 8 of Claimant's Fourth Amended Supplement fails to state a cause of action, for example because Claimant has not identified any disparaging statement about Claimant made to any factory by Respondent USL.

**Eighth: Affirmative Defenses to Claimant's Breach of Contract Claim in Paragraph 9**

Claimant's breach of contract claim against Respondent USL as alleged in paragraph 9 of Claimant's Fourth Amended Supplement fails to state a cause of action, for example because Claimant has not identified any instance where Respondent USL conveyed to any prospective customer any of Claimant's margin information, pricing, or product costs; has not identified how such information is protected; has not identified any specific customers for whom Claimant expects to renegotiate and lower its pricing in the future; has not alleged any facts that would tend to exclude other causes for Claimant renegotiating and lowering its pricing in the future;

and has not identified how and to what extent the alleged disclosure will force the Claimant to renegotiate and lower its pricing.

**Ninth: Affirmative Defenses to Claimant's Defamation Claims in Paragraphs 10 and 11**

Claimant's claims for defamation and defamation per se against Respondent Margolin as alleged in paragraphs 10 and 11 of Claimant's Fourth Amended Supplement are barred because the predicate statements were true or at least substantially true (or was, at least, an opinion) and, to the extent required, were within Margolin's privilege or authorization, including, for example, because they were made in response to false representations by Claimant, and fail to state a cause of action, for example because Claimant fails to demonstrate that the statements were false.

**Tenth: Affirmative Defenses to Claimant's Patent Infringement Claims in Paragraphs 12 and 13**

Claimant's claims for patent infringement as alleged in paragraphs 12 and 13 of Claimant's Fourth Amended Supplement are barred because USL's products do not infringe Claimant's patents, and fail to state a cause of action, for example because they fail to identify any product offered for sale or sold by Respondents that is alleged to infringe any of Claimant's patents and, with respect to the allegations in paragraph 12, and to the extent Claimant intended to plead a claim for fraud, because Claimant has not pled such fraud claim with the required particularity.

**Eleventh: Affirmative Defenses to Claimant's Patent Infringement Claims in Paragraphs 12 and 13**

Claimant's claims for patent infringement as alleged in paragraphs 12 and 13 of Claimant's Fourth Amended Supplement are barred because Claimant's patents are invalid.

**Twelfth: Affirmative Defenses to Claimant's Patent Infringement Claims in Paragraphs 12 and 13**

Claimant cannot prevail on its claims for patent infringement as alleged in paragraphs 12 and 13 of Claimant's Fourth Amended Supplement because Marc Zemel, a named inventor on all of the patents asserted by Claimant, engaged in inequitable conduct by intentionally withholding material prior art, including Mr. BBQ's own products, during prosecution of said patents before the United States Patent and Trademark Office, thereby rendering the asserted patents unenforceable.

**Thirteenth: Affirmative Defenses to Claimant's Patent Infringement Claims in Paragraphs 12 and 13**

Claimant's claims for damages for patent infringement as alleged in paragraphs 12 and 13 of Claimant's Fourth Amended Supplement are limited by 35 U.S.C. § 287 to damages occurring after Claimant's notice of infringement to Respondents.

**Fourteenth: Affirmative Defenses to Claimant's Claim for Tortious Interference in Paragraph 15**

Claimant's claim for tortious interference as alleged in paragraph 15 of Claimant's Fourth Amended Supplement is barred because Respondents did not engage in any wrongful conduct and because Respondents engaged in only lawful competition, which is Respondent's privilege.

**Fifteenth: Affirmative Defenses to Claimant's Claim for Tortious Interference in Paragraph 16**

Claimant's claim for tortious interference as alleged in paragraph 16 of Claimant's Fourth Amended Supplement is barred because Respondents did not engage in any wrongful conduct and because Respondents engaged in only lawful competition, which is Respondent's privilege.

**Sixteenth: Affirmative Defenses to Claimant's Claims for Tortious Interference in Paragraphs 15 and 16**

Claimant's claims for tortious interference with a prospective business advantage as alleged in paragraphs 15 and 16 of Claimant's Fourth Amended Supplement fail to state a cause of action, for example because Claimant fails to identify the alleged third parties or any statements made to such parties constituting tortious interference.

**Seventeenth: Affirmative Defense to Claimant's Claim for Unfair Competition in Paragraph 17**

Claimant's claim for unfair competition as alleged in paragraph 17 of Claimant's Fourth Amended Supplement fails to state a cause of action, for example because the accused conduct is not unlawful.

**Eighteenth: Affirmative Defense to Claimant's Claim for Breach of Fiduciary Duty in Paragraph 18**

Claimant's claim for breach of fiduciary duty as alleged in paragraph 18 of Claimant's Fourth Amended Supplement is barred because Claimant and Respondent USL were independent contractors, because neither Respondent was Claimant's agent, and because Respondents did not owe a fiduciary duty to Claimant, and because any such duty that might have existed was released and/or waived by the parties' agreements and conduct demonstrating that they assumed the risk of being independent entities.

**Nineteenth: Affirmative Defense to Claimant's Claim for Breach of Covenant of Good Faith and Fair Dealing in Paragraph 19**

Claimant's claim for a breach of the covenant of good faith and fair dealing as alleged in paragraph 19 of Claimant's Fourth Amended Supplement fails to state a claim and is barred because it does not allege any conduct different from Claimant's breach of contract claims.

**Twentieth: Affirmative Defense to Claimant's Claim for Tortious Interference in Paragraph 20**

Claimant's claim for tortious interference as alleged in paragraph 20 of Claimant's Fourth Amended Supplement is barred because Respondents did not engage in any wrongful conduct and because Respondents engaged in only lawful competition, which is Respondents' privilege, and fails to state a cause of action, for example because Claimant fails to identify any statements constituting tortious interference.

**Twenty-First: Affirmative Defense to Claimant's Claim for Copyright Infringement in Paragraph 21**

Claimant's claim for copyright infringement as alleged in paragraph 21 of Claimant's Fourth Amended Supplement is barred because Claimant was not in possession of any copyright registrations for the allegedly infringed works when Claimant filed Claimant's Fourth Amended Supplement, and fails to state a cause of action, for example because Claimant does not identify any photographs that Respondents unlawfully copied.

**Twenty-Second: Affirmative Defense to all of Claimant's Claims for Damages**

Claimant's claims for damages in Claimant's Fourth Amended Supplement are barred because the damages alleged are not "actual and direct damages, costs, and expenses" as required by paragraph 13(a) of the Services Agreement.

**Twenty-Third: Affirmative Defense to All of Claimant's Claims for Defamation, Tortious Interference, Unfair Competition, Copyright Infringement, Breach of Covenant of Good Faith and Fair Dealing, and Breach of Fiduciary Duty**

Claimant's defamation, tortious interference, unfair competition, copyright, breach of the covenant of good faith and fair dealing, and breach of fiduciary duty claims are barred as duplicative of Claimant's breach of contract claims and Claimant's election of contract remedies.

Dated: February 26, 2021

                                        Respectfully submitted,
                                        Davis Firm, P.C.

                                        <u>s/ Martin Pavane</u>
                                        Martin Pavane, Esq.
                                        Ed Chin, Esq.
                                        213 N. Fredonia Street, Suite 230
                                        Longview, Texas 75601
                                        903-230-9090 (office)
                                        917-539-7313 (cell for Martin Pavane)
                                        mpavane@davisfirm.com
                                        echin@davisfirm.com